Arthur FALLICK, Plaintiff–Appellant,

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY; Nationwide Life Insurance Company, Defendants–Appellees.**

No. 97–3939.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 24, 1998.

Decided Dec. 9, 1998.

Roger W. Van Deusen (briefed), Gaines & Stern, Cleveland, Ohio; Melvyn I. Weiss (briefed), Aaron W. Tandy (briefed), Brad N. Friedman (argued and briefed), Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Plaintiff–Appellant.

Anne M. Sferra (briefed), Randolph Carson Wiseman (briefed), Diane R. Brey (argued and briefed), Bricker & Eckler, Columbus, Ohio, for Defendants–Appellees.

Before: MERRITT, SILER, and GILMAN, Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

Plaintiff–Appellant Arthur Fallick has been an employee of Nationwide Mutual Insurance Company, a subsidiary of Nationwide Life Insurance Company, for more than 25 years. As a Nationwide employee, Fallick was and is both a "participant" and a "beneficiary" of the Nationwide Insurance Companies and Affiliates Employee Health Care Plan, an employee medical benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.* Nationwide was the fiduciary of that Plan, which was part of a group plan covering employees of other Nationwide entities. Nationwide also acted as the administrator or provided medical benefits through insurance contracts to other ERISA-governed plans of which Fallick is not a member.

Since 1992, Fallick has been on permanent disability leave due to health problems, including a heart condition, which require frequent medical attention, and therefore frequent claims for reimbursement from his medical benefits plan.

Since at least 1990, the Nationwide Plan has included a standard coverage exclusion limiting medical coverage to reimbursement for charges for a given service at a "reasonable and customary" rate. Such a standard is common among medical benefits plans governed by ERISA. On November 22, 1995, Fallick filed a complaint in the Franklin County (Ohio) Court of Common Pleas, alleging in part that Nationwide had breached its insurance contracts by applying the "reasonable and customary" limitations in a manner inconsistent with its contracts. Pursuant to 28 U.S.C. § 1441, Nationwide successfully petitioned to remove the action to the U.S. District Court for the Southern District of Ohio, claiming that Fallick's state court claims necessarily required inquiry into the terms of the employee benefits plan and therefore presented federal questions. *See* 29 U.S.C. § 1132(a).

Once in federal district court, Nationwide filed a Motion to Dismiss Fallick's complaint for lack of jurisdiction, arguing that ERISA preempted his common law claims. On February 6, 1996, the district court held this motion to be moot, however, because Fallick filed an Amended Complaint alleging multiple causes of action under ERISA. First, under ERISA § 502(a), 29 U.S.C. § 1132(a), Fallick maintains that Nationwide improper-

ly denied benefits to him and others by implementing a methodology for computing reasonable and customary limitations that is at odds with the provisions of the Nationwide Plan itself. Second, Fallick further contends that in approving and implementing this reimbursement methodology, Nationwide violated its fiduciary duties under ERISA § 409, 29 U.S.C. § 1109. Plaintiff seeks injunctive, declaratory and other relief on behalf of himself and a purported class of beneficiaries and participants in ERISA plans covering employees of entities which are not affiliated with Nationwide but whose plans are administered or insured by Nationwide.

On February 27, 1996, Nationwide filed a Motion to Dismiss Fallick's Amended Complaint for lack of standing and failure to exhaust administrative remedies. On March 28, 1996, Nationwide filed a preemptive Motion for an Order to Stay Class Certification. Soon thereafter, on April 22, 1996, Fallick filed a Motion for Class Certification seeking to represent a class of all persons who are or were participants in, and/or beneficiaries of, ERISA-regulated health benefit plans insured, administered or promulgated by Nationwide who were alleged to have been improperly denied reimbursement of medical expenses and/or whose reimbursement payments were misdirected to a provider, thereby delaying reimbursement.[1]

In an Opinion and Order filed on September 30, 1996 ("Opinion and Order"), District Judge Graham granted in part and denied in part Defendant's Motion to Dismiss, holding that Fallick lacked standing under Article III of the U.S. Constitution to represent participants in benefit plans other than his own. Nationwide's motion for an order that the case is not maintainable as a class action was thus denied as moot. The district court also denied Plaintiff's Motion for Class Certification, without prejudice, and ordered Fallick to file a new Amended Complaint and an Amended Motion for Class Certification. In its Opinion and Order, the district court de-

clined to rule on Nationwide's argument regarding Fallick's failure to exhaust his administrative remedies under the Nationwide Plan, and instead converted that part of the motion into one for summary judgment. The parties were given additional time to brief that issue.

Pursuant to the lower court's Opinion and Order, Fallick filed a Second Amended Complaint and an Amended Motion for Class Certification in conformance with the district court's directions. Fallick also filed a Motion for Reconsideration, or in the alternative, for interlocutory appeal, limited to the issue of his standing to represent absent class members who were participants in ERISA plans other than the Nationwide Plan. On November 4, 1996, Nationwide filed a Motion for Summary Judgment on the issue of exhaustion of administrative remedies.

On March 13, 1997, the district court granted Nationwide's Motion for Summary Judgment, entered judgment in Nationwide's favor, and dismissed the action. *See Fallick v. Nationwide Mut. Ins. Co.*, 957 F.Supp. 1442 (S.D.Ohio 1997). The district court then issued an order denying as moot Fallick's Amended Motion for Class Certification given the court's ruling on summary judgment and also denied Plaintiff's Motion for Reconsideration of the court's Opinion and Order with regard to lack of standing to maintain the class action suit. Fallick then moved for reconsideration of the court's order granting summary judgment. The district court denied that motion on July 28, 1997. Plaintiff then appealed to this Court.

The instant matter presents two issues for this Court. First, we must address whether the district court erred in granting the Defendants' Motion for Summary Judgment on the issue of whether Fallick failed to exhaust his administrative remedies under the Nationwide Plan prior to filing suit in federal district court to challenge the Plan's use of a "reasonable and customary" standard to limit

---

1. Nationwide's claim forms allow a participant seeking reimbursement to indicate whether the participant has already paid the provider of medical services. In his Amended Complaint, Plaintiff Fallick alleged that even in those instances when participants indicated that they had paid the provider, Nationwide nonetheless routinely forwarded payment to the provider in order to capture the time value of the payment before the error was corrected. This issue has been dropped on appeal.

medical reimbursement. Second, we must decide whether a potential class representative in an ERISA class action has standing to represent members of a putative class against numerous ERISA-governed benefit plans, even if he is only a member of one of those plans. For the following reasons, we reverse the order of the district court granting summary judgment in favor of the defendants and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Many ERISA plans have adopted a "reasonable and customary" standard for coverage of medical reimbursements to ensure that they are not forced to pay in full all medical claims regardless of whether they are commensurate with customary charges for such procedures and are otherwise reasonable. In May 1990, Nationwide announced to its employees that it had adopted such limits. In August of that year, Nationwide printed a reminder in its Benefits Bulletin and declared that such limits were being expanded to cover a wide variety of medical services.

The use of reasonable and customary limits allows Nationwide to increase automatically plan benefits based on rising medical costs. To this end, reasonable and customary limits are reviewed and updated once every six months, based on the charge information from the prior period. To the extent Nationwide determines that charges are in excess of its "reasonable and customary" standard, Nationwide treats the excess amount as if it is not covered by the policy. The plan participant or beneficiary must cover this difference between the reasonable and customary standard and the fee charged by the service provider.

Nationwide must adhere to its own established definition of "reasonable and custom-ary," which appears both in its insurance contracts and Plan booklets. "Reasonable and customary" means:

> reasonable in terms of service, care, or treatment provided, and customary in that it is equal to the charge made by those in the same geographical area with similar professional standing.

Nationwide Employee Handbook at 1195. However, the Nationwide Plan does not determine its own reasonable and customary limits. Rather, these limits are based on information supplied to Nationwide by a Nationwide-supported association of commercial insurers, the Health Insurance Association of America ("the Health Insurance Association"), which compiles prevailing health care charge date for each medical and/or surgical procedure performed in a given geographical area. The data is based on charges contributed by hundreds of insurance carriers. Once the information is gathered, the charges over the prior six-month period are ranked from highest to lowest. According to its Benefits Bulletin of August 5, 1991, Nationwide set the reasonable and customary limit at the 85th percentile, which means that 85 percent of the charges in that area are equal to or less than the reasonable and customary limit. In 1993, the 90th percentile was adopted. Although Nationwide uses this data to establish its "reasonable and customary" reimbursement limitations, the Health Insurance Association as a supplier of prevailing health care charge data explicitly disclaims any specific use or interpretation of that data. *See* Disclaimer, *Prevailing Healthcare Charges System,* Subscriber Reference Manual, at vi.

ERISA § 503, 29 U.S.C. § 1133, and its accompanying regulations contemplate that each Plan will establish and maintain a reasonable claims procedure for assessing benefits claims made by participants and beneficiaries.[2] The Nationwide Plan contains a

---

**2.** ERISA § 503, 29 U.S.C. § 1133, provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

typically comprehensive claims procedure which precludes a lawsuit against the Plan and related parties unless (1) the complainant has satisfied all the terms of the Plan, and (2) his claim for such benefits has been denied in writing by the Plan Administrator. *See* Nationwide Ins. Cos. and Affiliates Employee Health Care Plan § 13.1.13. Both the language of the Plan itself and the Summary Plan Description issued in April 1993 for the group insurance plan provide that appeals from denied benefits claims must be made in writing within six days of such denial. *See id.* § 13.1.3(2).

■ In the instant matter, Fallick discovered that his medical reimbursement requests were routinely reduced as being in excess of the Plan's reasonable and customary limitations. Fallick's Complaint lists over twenty separate charges that were reduced under the reasonable and customary limitations. He therefore began a prolonged series of communications with both Nationwide and the State of New York Insurance Department ("the State Insurance Department" or "the Department") to inquire about both the reduction of his benefits specifically and Nationwide's methodology generally. Fallick maintains that any further efforts at exhaustion of administrative remedies would be futile, as he alleges that Nationwide has consistently demonstrated its unwillingness to alter its methodology for determining reasonable and customary limitations. We agree. Indeed, Fallick's interaction with Nationwide is best summed up by the old Scottish saying that expresses the idea of futility: "You can't fatten a Greyhound." This assertion requires us to examine in detail Fallick's numerous pre-litigation attempts to communicate with Nationwide and the State Insurance Department in order to challenge the Plan's methodology.

Beginning no later than August 1993, Fallick tried repeatedly over a period of two years to challenge the methodology used by Nationwide to determine its reasonable and customary limitations. Fallick contends that in the Spring of 1993, he contacted Ms. Artie Scott–Dawson, a Nationwide Insurance Employee Claims Manager, regarding the use of reasonable and customary limitations in processing his claims for reimbursement of certain medical procedures which occurred in 1991, 1992, and 1993. As the district court correctly noted, this initial correspondence remains undocumented. *See Fallick v. Nationwide Mut. Ins. Co.,* 957 F.Supp. 1442, 1446 (S.D.Ohio.1997). Fallick further alleges that he failed to receive a response and thus contacted directly the State Insurance Department to inquire about Nationwide's practices and to request the Department's assistance. Fallick subsequently received a copy of a letter dated September 8, 1993, from Lloyd Lauver, Benefits Administration Manager at Nationwide, to Lester Grimmel, Supervisor of Consumer Services at the Department. In that letter, Nationwide acknowledged receipt of a letter dated August 23, 1993, which the Department had sent to Nationwide on Fallick's behalf. Nationwide also established its understanding "that Mr. Fallick's basic concern is regarding the reasonable and customary limitations provision of the Nationwide Insurance Employee Medical Plan." Following a cursory explanation of the manner in which it applies its reasonable and customary limits, Nationwide concluded "that Mr. Fallick's claims have been processed fairly based on policy guidelines."

Fallick also received a copy of a letter of November 1, 1993, from Ms. Scott of Nationwide to Ms. Merline Smith of the Department wherein Nationwide, pursuant to the Department's request, enclosed photocopies

---

To be considered reasonable, a plan's claims procedure must: (1) establish a procedure for the filing of claims by participants and beneficiaries, provide for a written notification procedure for denial or partial denial of claims, and provide for an appeal procedure for denied or partially denied claims, *see* 29 C.F.R. § 2560.503–1(b)(1)(i); (2) be described in the Summary Plan Description, *see id.* § 2560.503–1(b)(1)(ii); (3) not contain any provision and not be administered in a way that "unduly inhibits or hampers the initiation or processing of plan claims," *id.* § 2560.503–1(b)(1)(iii); and (4) provide for a procedure for informing participants in a timely fashion of the time periods for decisions on claims made and the time periods for making appeals and receiving decisions thereon, *see id.* § 2560.503–1(b)(1)(iv).

of Health Insurance Association data used by Nationwide to determine the reasonable and customary charge for each claim filed by Fallick. However, Nationwide did not explain the basis for that data beyond that it appeared to be based on sample fees charged by providers in a specific zip code area. On November 17, 1993, the Department wrote to Nationwide to inform it that the Department's review of the Health Insurance Association data that Nationwide had submitted several weeks earlier revealed significant discrepancies between the amounts listed in the 85th percentile of fees charged, that is, the amount Nationwide had pegged as its reasonable and customary limitation, and the amounts actually reimbursed by Nationwide. This review offered proof that Fallick had been undercompensated on numerous occasions. Accordingly, the Department requested that Nationwide issue payment to reflect these discrepancies. On November 22, 1993, Nationwide responded in writing to the Department's request, noting that pursuant to the Department's letter of November 17, "all charges previously denied as 'in excess of Reasonable & Customary' have been paid." Fallick did receive such payment.

Despite Nationwide's correction of specific accounting errors, Fallick remained undeterred. He renewed his inquiries regarding Nationwide's methodology in establishing its reasonable and customary limitations. In his letter of January 4, 1994, to Ms. Smith at the State Insurance Department, he made abundantly clear that his inquiries had not been addressed to his satisfaction. "My problem has not been resolved," he wrote. In particular, although Nationwide had reconsidered specific calculation errors with respect to a number of his claims, it had not altered the Plan's underlying methodology for calculating the claims of Plan beneficiaries, including Fallick's wife. "My complaint has not been resolved since no action has been taken by the department concerning ... the amount Nationwide deems as a reasonable and customary charge. No where [sic] in the policy does it state the percentage of the eighty-fifth percental [sic] be allowed [sic], nor does it mention the use of HIAA data base [sic] as a governing factor for payment," he wrote. Between January 4 and March 3, 1994, Fal-

lick telephoned Nationwide to contest the reimbursement received by his wife for one of her medical claims. On March 3, 1994, Nationwide wrote to the Department regarding this conversation, suggesting that the discrepancy "Mr. Fallick is appealing" was the result of an erroneous billing code submitted by the doctor who treated Mrs. Fallick and that Nationwide would reconsider its reimbursement upon receipt of a corrected code.

On August 22, 1994, Fallick's legal counsel, Mr. Paul Brozdowski, wrote to the Department to inquire further about the reasonable and customary limits used by Nationwide, as well as about a specific claim for medical services, the reimbursement for which exposed methodological flaws in Nationwide's application of its reasonable and customary limitations. The letter made two important points. First, the first three digits of the zip code for Bronx County, New York, a relatively poor jurisdiction, was used to process a charge for a laboratory procedure for Fallick, even though the lab where the work was performed is located in Metpath, New Jersey. Second, Brozdowski noted that had Nationwide followed strictly the Health Insurance Association data sheet for the reasonable and customary charges for Fallick's medical procedure in Bronx County, it should have allowed $52.00 for a test which cost Fallick $60.10. Instead, Nationwide paid 80% of $52.00, not 80% of $60.10, as contemplated by the Plan. Thus, Mr. Fallick was required to pay 20% of $52.00 plus $8.10, or $18.50 total, which represented 30.78% of the total bill. Again, Fallick challenged the methodology at the heart of the Plan. Brozdowski's letter to the Department concluded: "[I]t is my understanding that R & C limits are not part of the original policy or contract. I am interested to know who is HIAA, how they compute their data, and why a Bronx area zip code was applied to this bill." On September 7, 1994, the Department responded in writing, informing Brozdowski that his letter had been "forwarded to Nationwide for its position and response." On September 15, 1994, Na-

tionwide wrote to the Department to respond to Brozdowski's inquiries. Addressing the misapplication of the Bronx area zip code to laboratory services rendered in Metpath, New Jersey, Nationwide wrote that "the charge in question was reconsidered on [September 12, 1994] because the reasonable and customary amount for procedure code 86701 was higher in the New Jersey area." However, Nationwide still did not explain why the code for Bronx County, New York was used in the first place. As Brozdowski stated in his letter of October 8, 1994 to the Department: "Nationwide still has not explained its use of [the Bronx area zip code] for [services rendered] in New Jersey." More than two months later, on December 12, 1994, Brozdowski wrote to the Department yet again: "I still have not heard from you regarding Nationwide's use of [the Bronx area code for services rendered] in New Jersey.... Nationwide is continuing to deduct benefits based upon usual and customary fees without any explanation of the zip code used."

On February 2, 1995, Nationwide wrote to the Department to explain that it had used the Bronx area zip code "because the conversion table which accompanied the medical data" provided by the Health Insurance Association indicated that a number of different zip codes fell within the same geographical code for the purpose of determining the reasonable and customary charge for Fallick's treatment. The tone of Nationwide's letter indicates that it essentially considered the matter closed: "[O]ur goal is to provide prompt, fair and courteous service to all our Customers.... We feel that we have met our liability on this claim and spent enough time explaining the difference in our payment and the amount charged by the Provider. We are sorry but no further benefits are payable on this claim." Fallick still remained undeterred.

On April 14, 1995, Brozdowski wrote directly to Nationwide, requesting copies of "certain computerized [Health Insurance Association] Data Sheets which reflect the reasonable and customary charge" for the laboratory services performed in Metpath, New Jersey. Nationwide responded in a letter of

May 5, 1995. Citing a contractual obligation to the Health Insurance Association to refrain "from disclosing the data to anyone other than its Employees, Agents or Consultants whose duties require its specific disclosure," Nationwide stated that it could not release such data. It added: "On one occasion we released a limited amount of data to the New York State Insurance Department anticipating discreet handling. That release was an effort to resolve the claim expeditiously. Continued requests for this data indicate that complete discretion was not exercised. Therefore, we cannot release further information."

On March 27, 1995, Nationwide wrote directly to Mr. Fallick to inform him of what he already knew—that the Plan had erred in calculating the reimbursement he was due for the laboratory services conducted in New Jersey. While Nationwide admitted an accounting error with respect to this particular claim, it still did not address Fallick's repeated inquiries about the Plan's methodology. One month later, on April 27, 1995, Brozdowski again wrote to Nationwide on Fallick's behalf, again to question the methodology used to calculate medical reimbursements for beneficiaries of the Plan. Challenging the exclusion of a portion of a specific charge that Nationwide had deemed to be "in excess of either the reasonable and customary charge or the Plan's scheduled allowance," Brozdowski again requested that Nationwide "provide a detailed explanation of the basis for the calculation of the potion [sic] not covered, including but not limited to the area code used and why" and "forward copies of all [Health Insurance Association] Data Sheets, conversion tables, documents, schedules, etc. used or referred to in calculating the portion not covered." On June 14, 1995, Nationwide responded in writing, again citing contractual restrictions with the Health Insurance Association as the basis of its unwillingness to provide the information Brozdowski had requested. Nationwide concluded: "Again, our data combined with other healthcare prevailing medical data is used to establish R & C and we feel that our reasonable and customary determinations are statistically justified, in that the majority of procedures in the geographical areas surveyed are

billed at or below this reimbursement. We trust that our explanation of how this claim was handled is [sic] satisfactory to your client."

After two years of repeated inquiries by Fallick to ascertain (1) the precise nature of the methodology used by Nationwide to determine reasonable and customary medical reimbursements, and (2) whether that methodology conformed with Nationwide's medical benefits plan, Nationwide still had provided no more than a cursory explanation of its process. Fallick described his frustration in an affidavit to the U.S. District Court for the Southern District of Ohio:

> At this point I believe that I have more than "exhausted" any administrative remedies. I have repeatedly brought the nature of my claims to Nationwide's attention, in writing, and have repeatedly received denials, justifications and excuses in return. . . . Any further efforts on my part short of resort to this Court would, I believe, be futile.

Affidavit of Arthur Fallick at 8 (Mar. 25, 1996). Fallick then filed suit against Nationwide on November 22, 1995, in Ohio State Court, alleging that Nationwide had breached its insurance contracts by applying the "reasonable and customary" limitations in a manner with the Plan. Pursuant to 28 U.S.C. § 1441, Fallick's action was removed to the U.S. District Court for the Southern District of Ohio.

In the lower court, Plaintiff Fallick claimed that Nationwide's calculation of reasonable and customary charges deviate from the Plan's written description of those calculations in three ways. First, Fallick asserted that Nationwide calculates its payments for their group insurance plans based upon a set percentile (e.g. the 85th or 90th percentile) of the entire range of charges for a given procedure in a geographic region. Fallick claimed that this practice is inconsistent with the "equal to the charge" and "does not exceed the usual charge" language that Nationwide uses in its definition of "reasonable and customary." Second, Plaintiff asserted that Nationwide routinely fails to calculate the "usual charge" for a given medical procedure by the "reasonable and customary" amount in a geographic area. According to his Amended Complaint, Nationwide instead relies upon the Health Insurance Association to provide such figures. Fallick also alleged that the Health Insurance Association's data is sometimes inadequate, and that when that is the case, multiple disparate geographic areas are grouped together in the process of calculating the "usual charge." Third, Fallick argued that, based upon Nationwide's payment patterns, Nationwide makes no effort to differentiate the professional standing of various health care providers. According to the Amended Complaint, Nationwide treats as identical all surgeons in a particular field for purposes of determining a "reasonable and customary charge," regardless of a surgeon's standing in the profession or reputation in the community. Fallick thus maintained that Nationwide's wrongful conduct had damaged him and other members of the proposed class. Fallick, as an individual and the sole representative of the proposed class, brought claims for recovery of benefits and enforcement of rights under ERISA § 502, for breach of fiduciary duty under ERISA § 409 and for estoppel under ERISA and federal common law. His Amended Complaint also sought an accounting in addition to declaratory and injunctive relief. Finally, Fallick argued that he had largely complied with Nationwide's appeal process, and to the extent that he had not, the process is both futile and inadequate.

After its own review of the triangular dialogue of communications in every direction between Fallick, the State Insurance Department, and Nationwide, the district court found that the Plaintiff did not exhaust his administrative remedies with respect to the medical charges he incurred in 1991, 1992, and early 1993. In particular, the court found that this lengthy dialogue did not comply with the Plans's formal appeals process. *See Fallick v. Nationwide Mut. Ins. Co.*, 957 F.Supp. 1442, 1448 (S.D.Ohio.1997). Having found that Fallick had not exhausted his administrative remedies, the district court then briefly considered whether the exhaustion requirement should be excused under the "exception for instances when resort to the administrative process would prove fu-

tile." *Id.* at 1454. The court answered this question in the negative. *See id.* at 1455–56.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A. Exhaustion of Administrative Remedies under ERISA

■ The application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court and thus can be disturbed on appeal only if there has been an abuse of discretion. *See Costantino v. TRW, Inc.,* 13 F.3d 969 (6th Cir.1994); *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 453–54 (6th Cir.1991).

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B),[3] provides a contract-based cause of action to participants and beneficiaries to recover benefits, enforce rights, or clarify rights to future benefits under the terms of an employee benefit plan. ERISA is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action. The statute itself merely provides that a claims procedure must be established and sets forth minimum requirements for this procedure. *See* ERISA § 503, 29 U.S.C. § 1133. However, due to ERISA's provision for the administrative review of benefits, ten federal circuits have read an exhaustion of administrative remedies requirement into the statute.[4]

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits civil actions to be brought by participants or beneficiaries for relief under ERISA § 409, 29 U.S.C. § 1109,[5] for breaches of ERISA's fiduciary provisions. In this case, Fallick seeks to not only to enforce the terms of the Nationwide Plans, but also to hold Nationwide responsible for breaches of fiduciary duty for, among other things, operating the Plan in a manner inconsistent with Plan documents and thus improperly reducing benefits to which participants are entitled, failing to impart accurate information to himself and potential class members, and failing to protect the best interests of participants and beneficiaries. The question of whether one must exhaust administrative remedies when bringing an action to assert rights granted by ERISA itself is generally unsettled.[6] In the instant matter, because we find

---

**3.** ERISA § 502(a) provides, in pertinent part:

> A civil action may be brought—
> (1) by a participant or beneficiary—
> . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B).

**4.** *See Diaz v. United Agr. Employee Welfare Benefit Plan,* 50 F.3d 1478 (9th Cir.1995); *Communications Workers of Am. v. AT & T,* 40 F.3d 426 (D.C.Cir.1994); *Conley v. Pitney Bowes,* 34 F.3d 714 (8th Cir.1994); *Costantino v. TRW Inc.,* 13 F.3d 969 (6th Cir.1994); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991); *Berger v. Edgewater Steel Co.,* 911 F.2d 911 (3d Cir. 1990); *Curry v. Contract Fabricators, Inc. Profit Sharing Plan,* 891 F.2d 842 (11th Cir.1990); *Springer v. Wal–Mart Assocs.' Group Health Plan,* 908 F.2d 897 (11th Cir.1990); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195 (2d Cir.1989); *Makar v. Health Care Corp. of Mid–Atlantic (Carefirst),* 872 F.2d 80 (4th Cir.1989); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821 (1st Cir.1988); *Dale v. Chicago Tribune Co.,* 797 F.2d 458 (7th Cir.1986); *Mason v. Continental Group, Inc.,* 763 F.2d 1219 (11th Cir.1985); *Anderson v. Alpha Portland Indus., Inc.,* 752 F.2d 1293 (8th Cir.

1985) (*en banc* ); *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182 (3d Cir.1984); *Kross v. Western Elec. Co.,* 701 F.2d 1238 (7th Cir.1983); *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980).

**5.** ERISA § 409 provides:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable ... relief as the court may deem appropriate, including removal of the fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.
> (b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

29 U.S.C. § 1109.

**6.** Five circuits have held that exhaustion is required in such circumstances. *See Lindemann v. Mobil Oil Corp.,* 79 F.3d 647 (7th Cir.1996); *Hickey v. Digital Equip. Corp.,* 43 F.3d 941, 945

that exhaustion of administrative remedies would be futile, we need not reach this issue.

### B. The Futility Exception

■ Although ERISA's administrative exhaustion requirement for claims brought under § 502 is applied as a matter of judicial discretion, a court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate. *See Costantino v. TRW Inc.*, 13 F.3d 969 (6th Cir.1994); *see also Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397 (7th Cir.1996); *Diaz v. United Agr. Employee Welfare Benefit Plan*, 50 F.3d 1478 (9th Cir.1995); *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821 (1st Cir.1988); *Amato v. Bernard*, 618 F.2d 559 (9th Cir.1980); *Dameron v. Sinai Hosp.*, 626 F.Supp. 1012 (D.Md.1986), *aff'd in pertinent part*, 815 F.2d 975 (4th Cir.1987).

■ The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made. *See, e.g., Davis v. Featherstone*, 97 F.3d 734, 737 (4th Cir.1996); *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996); *Makar v. Health Care Corp. of Mid-Atlantic (Carefirst)*, 872 F.2d 80 (4th Cir. 1989); *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182 (10th Cir.1978). A plaintiff must show that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Lindemann*, 79 F.3d at 650. *See Communications Workers of Amer. v. AT & T*, 40 F.3d 426 (D.C.Cir.1994) ("The futility exception is ... quite restricted and has been applied only when resort to administrative remedies is clearly useless.") (quotations and citations omitted).

Plaintiff Fallick argues that any further efforts at exhaustion of administrative remedies would be pointless in the present case, as Nationwide has proven itself unwilling to alter its methodology for determining reasonable and customary limitations. In response, Defendant Nationwide asserts that it always has been and remains open to considering evidence of mistakes in its reimbursement calculations. Moreover, it points to the fact that it has remedied accounting errors with respect to Fallick's claims in the past despite the fact that Fallick did not engage the Plan's formal appeals process. In granting Nationwide's Motion for Summary Judgment, the district court stated:

> Whether Nationwide's method impermissibly deviates from the terms of the plan is chiefly [an issue] of interpretation of those terms. That interpretation, of course, must be assessed in the context of the unique factual posture of each claim, all of the information relevant to each claim with which Nationwide was provided and the ultimate manner in which Nationwide calculated reimbursement of each claim.

957 F.Supp. at 1455. In this respect, both the district court below and Defendant Nationwide on appeal seriously mischaracterize the gravamen of Fallick's claims. Although both Fallick and his legal counsel, Brozdowski, communicated with both Nationwide and the State Department of Insurance regarding the miscalculation of specific individual charges, the record clearly indicates that throughout his correspondence, Fallick endeavored consistently both to inquire about and to challenge Nationwide's methodology. And while Nationwide has proven itself amenable to correcting obvious miscalculations in accounting, it has never demonstrated that it would alter or even consider altering its underlying methodology, notwithstanding Fal-

(4th Cir.1995); *Communications Workers of Am. v. AT & T Co.*, 40 F.3d 426, 432 (D.C.Cir.1994); *Simmons v. Willcox*, 911 F.2d 1077 (5th Cir. 1990); *Dale v. Chicago Tribune Co.*, 797 F.2d 458 (7th Cir.1986); *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir.1985); *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1245 (7th Cir.1983). By contrast, six circuits do not require exhaustion on the ground that there is no need for deference to plan fiduciaries who have no exper-

tise in interpreting statutory rights. *See Chailland v. Brown & Root, Inc.*, 45 F.3d 947 (5th Cir.1995); *Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir.1993); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir. 1990); *Gavalik v. Continental Can Co.*, 812 F.2d 834, 849–50 (3d Cir.1987); *Fujikawa v. Gushiken*, 823 F.2d 1341 (9th Cir.1987); *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir. 1984).

lick's ERISA claims, both individually and on behalf of all other similarly situated.

In *Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir.1994), this Court affirmed the well-established principle that when resort to the administrative review process would be an exercise in futility, the exhaustion of remedies doctrine shall not apply. *See id.* at 974. A group of retirees from TRW brought a class action against their former employer and the Secretary of the Board of Administrators of TRW's Salaried Employees Pension Plan, alleging violations of ERISA, *inter alia.* In the exercise of its sound discretion, the district court ruled that because it would be futile for the plaintiffs to follow the administrative process, they did not have to exhaust their remedies. *See Costantino v. TRW, Inc.*, 773 F.Supp. 34, 44 (N.D.Ohio 1991), *aff'd,* 13 F.3d 969 (6th Cir.1994). In that case, TRW, like Nationwide in the instant matter, admitted that the purpose of its claim procedure was to provide an accessible avenue for challenging benefits denials based on plan interpretation. *See id.* The district court, however, saw plainly that TRW, like Nationwide here, either failed to comprehend the true nature of the plaintiffs' claim or merely chose to mischaracterize it. The court stated:

> The retirees ... are not challenging TRW's interpretation of its amendments, but the amendments themselves. It would be completely futile to require the retirees to exhaust this administrative remedy. TRW would simply re-calculate their benefits ... and reach the same result. Therefore, because the administrative process is futile, this Court, in its sound discretion, will not require the retirees to exhaust their administrative remedies before seeking relief in this Court.

*Id.* at 43. This Court affirmed based on the lower court's reasoning. *See* 13 F.3d at 974–75. *See also Corsini v. United Healthcare Corp.*, 965 F.Supp. 265, 269–70 (D.R.I.1997).

Likewise, in the present case, Fallick, his counsel, and the State Department of Insurance spent two years trying to ascertain both the precise nature of the methodology used by Nationwide to determine reasonable and customary medical reimbursements and whether that methodology conformed with the actual terms of the Plan. As Fallick argues on appeal:

> While [Nationwide] seek[s] to miscast this action as one primarily for a claim-by-claim payment of medical benefits, in reality this action is only tangentially about the reimbursement of individual medical claims. Instead, this case centers on Fallick's attempt to challenge defendants' across-the-board application of a methodology for determining reasonable and customary limitations which does not, by defendants' own admissions, take into account the terms of the Plans requiring that the "geographical area" where the service was performed and the "professional standing" of the provider both be utilized in assessing reasonable and customary benefits.

Plaintiff's Reply Br. 3–4. Yet throughout Fallick's quest, Nationwide has consistently defended its long-standing policy and has yet to provide more than but a cursory explanation of its methodology. Moreover, it has established unequivocally that it will continue to use data supplied by the Health Insurance Association to calculate its reimbursement determinations despite evidence that this policy violates the actual terms of the Nationwide Plan.

Clear and positive evidence of the futility of exhausting the Plan's administrative remedies may also be found by looking to the purposes of the exhaustion of remedies doctrine, as enumerated by the Fourth Circuit in *Makar v. Health Care Corp. of Mid–Atlantic (Carefirst)*, 872 F.2d 80 (4th Cir.1989), and by this Court in *Costantino.* In this case, requiring Fallick to exhaust Nationwide's formal administrative appeals process would in fact be contrary to the policies served by exhaustion. "The law does not require parties to engage in meaningless acts or to needlessly squander resources as a prerequisite to commencing litigation." *Corsini*, 965 F.Supp. at 269. First, Fallick's lawsuit is not frivolous, nor is it likely, after two years of inquiries and perpetual stalemate, that a forced return to the administrative process would make these proceedings less adversarial. Second, were Fallick to exhaust his remedies, both he, the class he seeks to

represent, and Nationwide would all incur additional litigation costs. Third, the factual record is already very well established here. Finally, while Nationwide might make further symbolic, token concessions by correcting individual accounting errors that should not have been made in the first instance, this Court is certain that Nationwide will not seriously reconsider its methodology. Every such adjustment is but a pyrrhic victory for Fallick and the proposed class. Consequently, exhaustion of administrative remedies in the instant matter would be futile.

Accordingly, we hold that Plaintiff Arthur Fallick may proceed both with his claim for breach of fiduciary duty under ERISA § 409 and with his claims of estoppel and other equitable relief under ERISA § 502 without exhausting his administrative remedies.

## III. STANDING

Fallick seeks to certify and represent a class of all persons who are participants or beneficiaries of ERISA-regulated health insurance plans administered or insured by Nationwide and who, as of January 1, 1990, made a claim for health care benefits and were improperly denied reimbursement of medical expenses. In its Opinion and Order of September 30, 1996 ("Opinion and Order"), the district court held that Fallick lacked standing under Article III of the U.S. Constitution to represent participants in benefit plans other than his own. The district court's opinion warrants close scrutiny, as its analysis confuses the requirements of Article III and Rule 23 of the Federal Rules of Civil

Procedure, which govern standing and the certification of class actions, respectively.[7]

The lower court began its inquiry into Fallick's standing by observing correctly that "[i]t is clear that, insofar as Fallick asserts his [ERISA] claims ... with respect to the Nationwide Plans, he has met the three requirements for standing" set forth by the Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[8] Opinion and Order at 19. Thereafter, however, the district court's analysis went astray. In opposing certification of Plaintiff's proposed class, Defendant Nationwide stressed that the class includes participants of other plans administered or insured by Nationwide in which Fallick is not a participant or beneficiary. Nationwide argued (1) that Fallick therefore lacked individual standing as to those claims, and (2) that those claims should be dismissed. The district court agreed, stating:

> The proposed class has been drawn to include class members who are participants or beneficiaries in plans that Fallick is not. Plaintiff Fallick clearly lacks individual standing to assert those causes of action. Class certification in this case would not only be improper, but it would be insufficient to bestow upon plaintiff the requisite individual standing to invoke federal jurisdiction over the claims he asserts in his amended complaint on behalf of others. This is the case regardless of the extent to which his legal claims against defendants may be typical of participants of other plans, and regardless of the extent to which his factual circumstances may be

**7.** Rule 23 sets our four prerequisites for any class action: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). Assuming these threshold requirements are met, the action may be maintained as a class action if: the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, *see* Fed.R.Civ.P. 23(b)(2); or the court finds that the questions of law or fact common to the members of the class predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, *see* Fed.R.Civ.P. 23(b)(3).

**8.** Under *Lujan*, in order to establish standing to sue a defendant, a potential plaintiff must: (1) have suffered an injury-in-fact, an invasion of a legally protected interest that is concrete and actual; (2) demonstrate that a causal connection exists between the injury and the conduct of which the plaintiff complains; and (3) demonstrate the likelihood, and not merely the speculative possibility, that the injury will be redressed by the requested relief. *See* 504 U.S. at 560–61, 112 S.Ct. 2130.

similar to those individuals.... Because individual standing is a threshold jurisdictional injury, the proper procedure in this case is to dismiss the claims plaintiff asserts in this case on behalf of his proposed class.

Order and Opinion at 23–24.

The district court's analysis is fundamentally flawed in two important respects. First, conceptually, it confuses the issue of a plaintiff's standing under Article III vis-a-vis a defendant with the relationship between a potential class representative and absent class members, which is governed by Rule 23 of the Federal Rules of Civil Procedure. *See Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir.1985), *aff'd,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Cooper v. University of Texas at Dallas,* 482 F.Supp. 187 (N.D.Tex.1979), *aff'd,* 648 F.2d 1039 (5th Cir. 1981). Second, the district court overlooks several apposite decisions of courts both in this Circuit and others that hold that an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans. *See Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101 (5th Cir.1993); *Misch v. Community*

*Mut. Ins. Co.,* 1995 U.S. Dist. LEXIS 5059 (S.D.Ohio Feb. 15, 1995); *Sutton v. Medical Serv. Assoc. of Pennsylvania,* 1993 WL 273429 (E.D.Pa.1993); *Doe I v. Guardian Life Ins. Co. of Am.,* 145 F.R.D. 466 (N.D.Ill. 1992).[9]

■ "[T]he question of standing is whether the litigant is entitled to have the [judiciary] decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Although "[t]his inquiry involves both constitutional limitation of federal-court jurisdiction and limitations on its exercise," *id.,* "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. The Supreme Court made clear in *Warth* that "[i]n its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' *between himself and the defendant* within the meaning of Article III. This is the threshold question in every federal case, determining the power of the court to entertain the suit." 422 U.S. at 498, 95 S.Ct. 2197 (emphasis added).

9. In support of their general proposition that a plaintiff must be a participant or beneficiary of every plan against which he brings a claim, defendants cite the Ninth Circuit's opinion in *Acosta v. Pacific Enterprises,* 950 F.2d 611 (9th Cir. 1991). In that case, plaintiff Gerald Acosta was an employee of the Southern California Gas Company, a wholly-owned subsidiary of Pacific Enterprises. As a participant in that company's Retirement Savings Plan, Acosta owned common stock in Pacific Enterprises and, pursuant to the plan provisions, was entitled to vote the shares allocated to his plan account by instructing the plan's trustee, fiduciary, and shareholder of record, First Interstate. Acosta brought suit individually under ERISA to compel Pacific Enterprises and First Interstate to provide him with lists of names, addresses and shareholdings beneficially owned by each participant in those plans so as to allow him to solicit votes in the parent company's corporate directors election. Acosta claimed that in refusing to provide such information, Pacific Enterprises and First Interstate had breached their fiduciary duty and engaged in self-dealing in violation of ERISA. The district court granted summary judgment for the defendants with respect to both ERISA claims and denied Acosta's request for a preliminary injunc-

tion. The court determined that Acosta did not have standing to challenge decisions affecting plans or participants of plans in which he did not participate. The court of appeals affirmed, finding Acosta "lacks standing to sue regarding the administration of the remaining plans, in which he does not participate." *Id.* at 617.

However, unlike *Cooper* and Fallick's claims in the instant matter, Acosta brought suit only in his individual capacity; he did not seek to represent a class of plaintiffs similarly situated with respect to the two pension plans in question. In this respect, the Ninth Circuit's standing analysis was correct. At the same time, however, this important difference renders *Acosta* inapposite to the case now before this Court. Had Acosta sought to bring a class action, the Ninth Circuit would first have had to determine whether he had standing to sue his own plan, and that plan only. In a class action framework, however, the second question whether Acosta could have represented members of the putative class against their own plans would have depended solely on whether his relationship with those class members satisfied Rule 23, not a separate determination of standing, which was relevant in *Acosta* only with respect to the facts presented to the Ninth Circuit.

Threshold individual standing is a prerequisite for all actions, including class actions. *See O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). A potential class representative must demonstrate individual standing vis-as-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action. *See Brown v. Sibley*, 650 F.2d 760, 770 (5th Cir.1981). As this Court has made clear, however, "once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants." *Senter v. General Motors Corp.*, 532 F.2d 511, 517 (6th Cir.1976). Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure. *See Cooper v. University of Texas at Dallas*, 482 F.Supp. 187 (N.D.Tex.1979); HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 2.05 (3d ed.1992). Thus, in the instant matter, once the district court correctly determined that Fallick had standing to bring suit under ERISA against Nationwide with respect to its application of reasonable and customary limitations to its determination of medical benefits—a methodology which, by Nationwide's own admission, it employs in all the benefits plans which Fallick wishes to include under the aegis of the proposed class—the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with respect to the absent class members.

Where, as here, the crux of an ERISA plaintiff's complaint concerns the methodology used to determine benefits, courts have recognized that the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved. *See Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir.1993); *Sutton v. Medical Serv. Ass'n of Pa.*, 1993 WL 273429, at *5 (E.D.Pa. July 20, 1993) ("[T]he issue in this action concerns only the *manner* in which a claim was processed once it was received by Pennsylvania Blue Shield. The issue, thus, concerns whether defendants have violated their duties as fiduciaries under ERISA through the formulation and implementation of the claims procedure which they have admitted they have applied uniformly to the claims of the members of the class.") (emphasis added); *id.* ("[E]ach class member in this action alleges the same injury, which injury each member of the class alleges arose from defendants' *method* of response to claims submitted to Pennsylvania Blue Shield.") (emphasis added).

In *Forbush v. J.C. Penney Company, Inc.*, 994 F.2d 1101 (5th Cir.1993), plaintiff Mary Jane Forbush, a vested retiree under the J.C. Penney Company Pension Plan, sought class certification for her claim that J.C. Penney's method for calculating social security benefits violated ERISA. J.C. Penney opposed certification on several grounds, but relied most heavily on the fact that the potential class was covered by four different pension plans. *See id.* at 1103. The district court denied Forbush's motion for class certification, finding that the analysis of four different pension plans would have required the court to decide the merits of each class member's claim on an individual basis. Forbush's standing to sue her own pension plan was never at issue in that case, nor was there any question that Forbush was a member of only one of the four plans involved, a fact acknowledged by the court of appeals, *see id.* at 1106 ("It is true that much of the putative class is covered by plans other than the one applicable to Forbush....."). Thus, on appeal, the Fifth Circuit did not even consider whether she had standing to represent absent class members in the other plans. Rather, the court properly proceeded to an analysis of whether Forbush's relationship with the proposed class satisfied Rule 23. The court's treatment of the requirements of commonality, *see* Fed.R.Civ.P. 23(a)(2), and typicality, *see* Fed.R.Civ.P. 23(a)(3), are of particular interest to the instant matter. The court noted that the common issue alleged by Forbush was whether J.C. Penney's

**424**

alleged overestimation of social security benefits violated ERISA's nonforfeiture provisions: "Framed in this manner, Forbush has met the commonality requirement, despite the fact that four different pension plans are involved. The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." 994 F.2d at 1106. The court also found that Forbush's claims were typical of the proposed class: "It is true that much of the putative class is covered by plans other than the one applicable to Forbush, but Forbush has framed her challenge in terms of Penney's *general practice* of overestimating social security benefits. Her claim is therefore typical...." *Id.* (emphasis added). Having found that Rule 23(a)(1) (numerosity) and Rule 23(a)(4) (adequacy of representation) were also satisfied, the court reversed the district court's order denying class certification and remanded the case to the district court with instructions to certify the class as requested by Forbush.

The foregoing analysis supports our conclusion that once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case for further consideration, with specific instructions to the district court to proceed with a careful Rule 23 analysis of Plaintiff Arthur Fallick's relationship with the putative class of similarly situated persons entitled to participate in or benefit from ERISA plans administered or insured by Nationwide, including plans of which he is not a member.