McKEAGUE, Circuit Judge,
concurring.
I concur fully in the result reached by the majority. I write separately to clarify the route by which I believe we get there. In my opinion, the ERISA claims of the plaintiffs other than Miller should be given de novo review, instead of deferential review under the arbitrary or capricious standard, and our review should not be limited to the administrative record. In any event, the plaintiffs’ ERISA claims fail under either standard of review.
I
Generally, we review a district court’s decision in a § 1132(a)(1)(B) ERISA action under de novo review. Moon v. Unum Provident Corp., 405 F.3d 373, 378 (6th Cir.2005). Arbitrary or capricious review *156 is only used when a plan administrator has denied benefits and the benefits plan “vests the administrator with complete discretion in making eligibility determinations.” Id. at 378-379. The only retired plaintiff in this case, Miller, submitted a claim to the plan administrator under a benefits plan that undisputably vests the administrator with discretion. Thus, I agree with the majority’s review of the plan administrator’s denial of Miller’s benefits under the arbitrary or capricious standard.
Because the other plaintiffs have not retired and did not submit their claims[1] to the plan administrator, de novo review of their ERISA claims would ordinarily be appropriate.[2] However, the majority approves the district court’s finding that there was an agreement to submit Miller’s claim to the plan administrator and to treat the decision on her claim as a representative for the claims of the other plaintiffs. Szolce, 2006 WL 2792161, at *2, 2006 U.S. Dist. LEXIS 69325, at *5. Thus, the plan administrator’s decision was deemed applicable to all plaintiffs. While there are indications in the record that some sort of agreement existed, the evidence does not clearly establish that the parties agreed that the plan administrator’s disposition of Miller’s claim was to be representative of all claims.
The parties allegedly reached this agreement during an informal status conference in the district court, before the Honorable John M. Manos, on May 25, 2004. However, the minutes from that conference do not refer to an agreement. (R. 49, Minutes of Proceedings, at 1 (“This action is held in abeyance pending exhaustion of administrative remedies as to the current retiree Plaintiff.”)). Indeed, there is no tangible recording of such an agreement anywhere in the record. Complicating matters, Judge Manos passed away in 2006 and the case was reassigned. Without clear evidence that the other plaintiffs agreed to use Miller’s claim as a representative of their claims, or any evidence that suggests they agreed to be bound by the plan administrator’s decision, I would conduct de novo review of the disposition of their claims.
Plaintiffs argue that the district court improperly limited its review of the ERISA claims to the administrative record considered by the plan administrator. The majority rejects that argument and I concur with this decision as applied to Miller’s claim. Moon, 405 F.3d at 378 (noting that federal courts are limited to reviewing the administrative record as it existed when the plan administrator made its final decision). However, because I would review the decision on the claims of the other plaintiffs de novo, and because that decision was not premised on a claim-specific administrative record, I would hold that the district court had a duty to consider evidence proffered by Plaintiffs outside the administrative record.
II
Turning to the merits, Plaintiffs argue that the district court erred in declaring *157 that the plaintiffs were not entitled to continuing participation and benefits from the UPS Retirement Plan. Even under de novo review, I would affirm the determination that Plaintiffs’ ERISA claims fail.
The issue is whether Plaintiffs’ transfer from the Retirement Plan to the Pension Plan on September 1, 1995 was contrary to the collective bargaining agreement. There is no need to reiterate all the evidence considered by the plan administrator and referred to in the majority’s opinion. I agree that all of this evidence supports the conclusion that the union either agreed to or ratified a transfer of the plaintiffs to the Pension Plan in September 1995. The language contained in two subsequent agreements concerning the plaintiffs is particularly persuasive on this point. Plaintiffs were all delivery center clerks. On January 19, 1996, UPS and the union executed an agreement concerning Delivery Center employees which stated that “[ejmployees will remain in a United Parcel Service Health & Welfare and Pension Plan unless dictated otherwise by contract language (including the Ohio Rider).” Admin. Rec. at 28A (emphasis added). During the next collective bargaining agreement period, on September 15, 1997, UPS and the union executed a letter of understanding that amended the Ohio Rider for all clerical employees, which presumably included the delivery center clerks. Id. at 33. This agreement stated that UPS “will improve the present Pension Plan of the full-time union clerks in the UPS Pension Plan from a maximum benefit of fifteen hundred dollars ($1500) per month to seventeen hundred and fifty dollars ($1750) per month.” Id. (emphasis added). Neither agreement refers to the Retirement Plan and at least some plaintiffs received notice of the change in benefits. Id. at 43 (letter to Cecelia Miller). Read with all of the other evidence in the record, these two agreements establish that the union either approved of or ratified the transfer of the plaintiffs from the Retirement Plan to the Pension Plan on September 1, 1995.
The evidence proffered by Plaintiffs from outside the administrative record does not alter this conclusion. Plaintiffs argue that the district court should have considered a provision of the 1993 collective bargaining agreement as well as the declaration of Joseph Pierani, a union representative. Plaintiffs contend that the language from the 1993 CBA prohibited UPS from transferring Plaintiffs into the Pension Plan. I concur in the majority’s conclusion at n. 5 that this language simply prohibits UPS from entering into side agreements with employees or groups of employees, not from renegotiating specific terms with the union. UPS and the union were free to negotiate or approve a transfer of the plaintiffs into the Pension Plan.
Plaintiffs also argue that the Pierani declaration shows that the transfer of the plaintiffs from the Retirement Plan to the Pension Plan was not based on any provision in a collective bargaining agreement and is in fact a violation of the CBA. However, part of this argument rests on an assumption that the 1993 CBA prohibited UPS and the union from renegotiating specific terms — which is wrong. Otherwise, nothing in the Pierani declaration calls into doubt the conclusion that Plaintiffs were properly transferred from the Retirement Plan to the Pension Plan. Indeed, it only serves to confirm Plaintiffs were transferred into the Pension Plan. Pierani is a union representative who negotiated with UPS from 1995-1998 about the closure of the Delivery Information Center, where many of the plaintiffs worked. According to the declaration, Pierani and his UPS counterpart came to an understanding in 1995 that the employ *158 ees would “remain in the same health and welfare pension plans unless dictated differently by the contract language including the Ohio Rider.” (R. 77, ex. 20, Pierani Dec. at 2.)
This “understanding” of course, was preliminary; the full agreement was not reached until three years later, well after Plaintiffs were transferred to the Pension Plan. (Id.) Further, nothing in this understanding prevented the union and UPS from later agreeing to transfer Plaintiffs to the Pension Plan in September 1995. Finally, the language in the final 1998 agreement regarding the closure of the Delivery Information Center states that, “[ejmployees will remain in a United Parcel Service Health & Welfare and Pension Plan unless dictated by contract language (including the Ohio Rider).” (R. 78, ex. 10 (emphasis added)). This confirms that those plaintiffs working at the Delivery Information Center were previously transferred to the Pension Plan.
Thus, the evidence Plaintiffs argue the district court should have considered makes no difference. When this evidence is examined along with the entirety of the administrative record, it is apparent that the union either bargained for or ratified a transfer of the plaintiffs from the Retirement Plan to the Pension Plan in September 1995. Therefore, even under de novo review in light of an expanded record, the judgment of the district court is properly affirmed.

. Because the plaintiffs other than Miller are not retired, their claims are slightly different. Presumably the other plaintiffs sought to clarify "future benefits under the terms of the plan” while Miller’s claim was to "recover benefits due to [her] under the terms of [her] plan.” 29 U.S.C. § 1132(a)(1)(B).

. For ERISA claims, the Sixth Circuit has generally recognized an exhaustion of administrative remedies requirement that is committed to the discretion of the district court. Fallida v. Nationwide Mut. Ins. Co., 162 F.3d 410, 418 (6th Cir.1998). Exhaustion was not addressed below and I assume for purposes of this case, where the non-retired plaintiffs are seeking a judgment to clarify future benefits, that exhaustion was not required under § 1132(a)(1)(B).