Frank J. CROSBY, individually and on behalf of all others similarly situated, Plaintiff,

v.

BOWATER INCORPORATED RETIREMENT PLAN FOR SALARIED EMPLOYEES OF GREAT NORTHERN PAPER, INC., and Bowater Incorporated, Defendants.

Case No. 1:01–CV–683.

United States District Court, W.D. Michigan, Southern Division.

Nov. 26, 2002.

Eva T. Cantarella, Hertz, Schram & Saretsky, P.C., Bloomfield Hills, MI, for Plaintiff.

Scott R. Sikkenga, Miller, Canfield, Paddock and Stone, P.L.C., Kalamazoo, MI, for Defendant.

## *OPINION*

ENSLEN, District Judge.

This matter is before the Court to considerate three separate issues: (1) whether to certify this action as a class action pursuant to Federal Rule of Civil Procedure 23; (2) whether to grant or deny the Motion to Dismiss of Defendants (Bowater Incorporated and its Retirement Plan) and the Cross–Motion for Summary Judgment of Plaintiff Frank J. Crosby; and (3) whether to award equitable remedies in the event that Plaintiff succeeds as to his Cross–Motion for Summary Judgment.

On review of the briefing and the papers filed in this matter, the Court dispenses with oral argument since it would unnecessarily protract the resolution of these issues.

### *FACTS*

This is the rare case which for the most part surrounds an isolated legal question. The question is whether the Defendant Retirement Plan was permitted to reduce its payments to a retiree who elected to cash out

his retirement benefits based on a mortality discount for years prior to his 65th birthday. There are no disputed factual issues which affect the resolution of this legal question.

Before discussing this question, a few comments are in order about the class certification allegations. As is apparent from the Complaint and the briefing filed, this Complaint stems from a sale of a business which left some workers electing to receive their vested retirement benefits before normal retirement. (*See* Complaint at ¶¶ 9, 63–65.) Plaintiff estimated the number within the class at 350 members. (*Id.*) This estimate was based on the total number of affected works as well as formal studies which indicate that workers who have a cash-out option in retirement benefits almost always elect the cash-out option. (*Id.*) Since providing the estimate, Plaintiff has discovered additional facts and located evidentiary materials pertinent to the likely number of affected workers.

This Plan has been extant since 1992. (Defendants' Response Brief at 8.) Under the terms of the Plan, participants are vested after five years of service. (Plan §§ 10.1, 12.1(a)-(b) and 12.2(b).) Plan data from the most recent Form 5500 Annual Reports confirm that as of January 1, 2000, there were 89 terminated vested participants, 12 retiree participants or beneficiaries receiving annuity payments and 220 active participants. (Plaintiff's Reply Exhibit 35, at Schedule B.) Each of the 220 participants is fully vested. (*Id.*) The 2000 Plan Annual Report also assumes that terminated vested participants, other than annuity recipients, have elected lump sum benefits. This was assumed in the Notes to the Report, which state: "As a result of the sale of GNP, all participants not receiving annuity payments are assumed to take a lump sum distribution on January 1, 2001, as permitted by the Plan." (Plaintiff's Reply Exhibit 36, at 6.) The financial data contained in the Report likewise suggests this result in that the high amounts paid during the year are the likely consequence of payment of lump sum benefits rather than those payments to the very few participants or beneficiaries electing annuity payments. (*See* Plaintiff's Reply at 12 and documents cited therein.) Similar conclusions are warranted as to the earlier Plan financial reports for 1996 and 1999. (*See* Plaintiff's Reply at 13 and 14 and documents cited therein.) Furthermore, it is rational to assume that during the nearly three years since the 2000 Report, additional participants have retired and have elected lump sum benefits.

Plaintiff has filed his own Affidavit pertinent to the number of class members. His Affidavit states in pertinent part that at the time of the sale most plan participants, to his knowledge, continued to participate in the Plan as workers for the purchaser, Inexecon. (*See* Crosby Affidavit of September 30, 2002 at ¶ 9.) Notwithstanding, it is also apparent from Plaintiff's Affidavit that a significant minority of Plan participants have elected benefits due to retirement and the great majority of those have elected a lump sum payout. (*Id.* at ¶¶ 5–11.) Indeed, Crosby conducted a sample survey of 36 Plan participants.[1] All 36 either had opted to receive lump sum benefits or intended to opt for those benefits in the future. (*Id.*)

Defendants were provided an opportunity to contest these documents and conclusions. Despite the opportunity, Defendants have failed to file any evidentiary materials sufficient to justify a conclusion other than that the number of class members likely to participate in the class are sufficiently numerous to make joinder of all class members impracticable.

Plaintiff, and the putative class, are represented by the law firm of Hertz, Schram and Saretsky, P.C. This law firm is nationally recognized for its plaintiff representation in ERISA and employee benefit cases. It has appeared in more than 30 reported cases within the Sixth Circuit Court of Appeals and in an even larger number of cases nationally. It has also won class certification and substantive relief in a number of reported decisions, including the Sixth Circuit's decision in *Rawlings v. Prudential–Bache*, 9 F.3d 513

---

1. The Court in no way confuses Plaintiff's survey with a scientific or disinterested survey of Plan participants, given Plaintiff's participation in this suit. Nevertheless, those numbers are what they are and suggest conclusions consistent with those reached by Plaintiff.

(6th Cir.1993) and the Eleventh Circuit's decision in *Lyons v. Georgia–Pacific Corp. Salaried Employees Retirement Plan,* 221 F.3d 1235 (11th Cir.2000). The law firm is located in Bloomfield Hills, Michigan. Thus, the law firm and the lead attorney, Bradley Schram, appear to be very experienced and capable advocates for the class.

As to the merits of this action, Plaintiff has brought this action under sections 203(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA") (codified at 29 U.S.C. §§ 1053(a)(2) and 1132(a)(3)). Plaintiff sued Defendants based on his right to benefits which accrued when his employer sold its subsidiary, Great Northern Paper, which employed Plaintiff. Plaintiff was then eligible, and elected, a lump sum distribution of his retirement benefits under the Plan. These benefits were part of an accruing retirement account which had long ago vested. Plaintiff elected to receive his retirement benefit in a lump sum and, consistent with its regular practice, the Defendant Plan Administrator calculated Plaintiff's benefits by use of a "whipsaw calculation," *i.e.,* reducing the benefit to its present value by use of a discount rate (to account for the effect of interest) and a mortality table (to account for the likelihood of Plaintiff's pre-retirement death). Plaintiff does not dispute the use of the discount rate, but does dispute the use of the mortality table as to his pre–65 years. The benefit as computed by Defendants resulted in a lump sum payout of $52,013.90. According to Plaintiff, without the mortality reduction, the amount of the lump sum payout would be computed at $57,262.98.

Defendants' Plan is silent on this precise question. The Plan gives the Defendant Administrator deference to make plan interpretations and requires the employee to exhaust administrative remedies. Plaintiff has exhausted administrative remedies as demonstrated by the correspondence as to this dispute. (*See* Defendants' Motion to Dismiss, Exhibits 2–5.) Plaintiff's legal claim is that the above computation of his benefits violates the anti-forfeiture rules of section 203(a)(2) of ERISA (29 U.S.C. § 1053(a)(2)) by reducing an accrued benefit. Defendants' position is that the statute and regulations are silent on this point and the Plan Administrator permissibly interpreted the Plan in making this calculation.

## CLASS CERTIFICATION STANDARDS

According to the United States Supreme Court, this Court must conduct a "rigorous analysis" into whether the prerequisites of Federal Rule of Civil Procedure 23 are met before certifying a class action. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *In re American Med. Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). The "rigorous analysis" requirement means that a class is not maintainable merely because the complaint parrots the legal requirements of Rule 23. *American Med. Systems,* 75 F.3d at 1079. Although a hearing prior to the class determination is not always required, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364; *see also Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir. 1974) (stating that in some cases it will be necessary to give the parties an opportunity to present evidence on the certification question). In this case, an evidentiary hearing is unnecessary because of the extensive briefing in connection with the dispositive motions and because the case centers around a purely legal decision about a calculation method which is applicable to all class members alike.

Rule 23 places the burden of class certification on Plaintiff. *American Medical Systems,* 75 F.3d at 1079; *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir. 1976). Under the language of the Rule, Plaintiff must prove four prerequisites under subsection (a) and one of the clauses under subsection (b) for the class to be certified. The Rule provides in pertinent part as follows:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) * * *; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or....

Fed. R. Civ. Proc. 23(a)-(b).

## *CERTIFICATION ANALYSIS*

Under Rule 23, certification analysis first addresses the four preliminary requirements of Rule 23(a)—*i.e.*, (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation. *Senter*, 532 F.2d at 522. Once these prerequisites are satisfied, then Plaintiff must satisfy one or more of the requirements of subsection (b) for certification. *Id.*

### (1) Numerosity

To begin this analysis, the Court must determine whether the class is sufficiently numerous that joinder is impracticable. Numbers alone are not dispositive when the numbers are small, but will dictate impracticability when the numbers are large. H. Newberg and A. Conte, *1 Newberg on Class Actions*, § 3.05 (3rd ed.1992). Although Rule 23 imposes no "numerical" limit, it has been held in this circuit that a class of 35 employees was sufficient to meet the numerosity requirement. *See American Med. Systems*, 75 F.3d at 1076 (citing *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir.1974)); *see also Roman v. Korson*, 152 F.R.D. 101, 105 (W.D.Mich.1993); *Van Vels v. Premier Athletic Center of Plainfield, Inc.*, 182 F.R.D. 500, 507 (W.D.Mich.1998); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 286 (W.D.Mich. 2001).

Here, the expected numbers are much larger. This class action relates to a class of retirees, and future retirees, who either were affected by, or stand to be affected in the future, by Defendants' calculation method for lump sum payments. The evidence cited above clearly demonstrates that the class size is somewhere between 40 and 350 (the total number of plan participants) and is much more likely to consist of the majority of the plan participants since many, if not most, plan participants would retire before age 65 and would elect the option of lump sum payment. (*See* GAO Report, *Private Pensions, Implications of Conversions to Cash Balance Plans*, No. HEHS–00–185, at 4 (Sept. 29, 2000) (Defendants' Reply Exhibit 33) (stating based on survey that majority of plan participants opt for a lump sum payment).) Therefore, the Court determines that the numerosity requirement is met.

### (2) Commonality

Rule 23 requires "commonality"—meaning, questions of law and fact common to all class members. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998). Not all common questions suffice. *Id.* What is necessary for certification are common issues the resolution of which advance the litigation. *Id.* The purpose of this inquiry, according to the United States Supreme Court, is to ensure that a class action is an economical means of addressing the legal claims and that the legal claims of both representatives and class members will be fairly resolved through the process. *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364. Once it is determined that there are common questions of law and fact, differences in the amounts of damages sustained by class members will not usually defeat certification. *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir.1984).

█ This case is a perfect one for class certification because of truly common ques-

tions of law and fact. Each of the class members are participants in the same retirement plan who have been injured by a common practice of the Defendant Retirement Plan—that is, calculation of retirement benefits utilizing a mortality discount for years prior to the participant's 65th birthday. Whether this calculation is proper is purely a legal question under ERISA and the pertinent plan language. Furthermore, resolution of this question will essentially determine liability and equitable relief as to the claims of all class members.

In circumstances like this, *i.e.*, class actions brought on behalf of retirees subject to a common practice of denying benefits, the federal courts have consistently found commonality. *See, e.g., Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1103 (5th Cir.1993) (finding that certification was required under Rule 23 and that there was commonality as to class members who were each vested retirees of the J.C. Penney Company Pension Plan and who were injured by a common method for estimating social security benefits for the purpose of determining retiree benefits); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.1998) (following *Forbush* and remanding for certification decision); *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 596 (E.D.Mich.1996) (following *Forbush*).

In fact, the instant case presents an even better case for certification than some of the cases cited. In this case, there is a single plan which applies to all class members and there is a strictly legal dispute as to a standard calculation method utilized by Defendants. As such, the Court determines that there are common questions of law the resolution of which will advance the litigation.

Notwithstanding this commonality, Defendants assert several arguments that are directed toward both the commonality requirement and the typicality requirement of Rule 23. Defendants assert that "future lump sum recipients," who are the bulk of the class and who, unlike Plaintiff Crosby, have not yet been shorted by the Plan, do not have standing to assert a future right to payment, especially since the Plan may be amended in the interim so as to make clear that benefits

may be calculated in the manner suggested by Defendants. This argument is thoroughly wrong. To start, once benefits are "accrued" under a Plan, then the anti-cutback rule codified at 29 U.S.C. § 1054(g) prevents plan modifications reducing the accrued benefits. As is explained later in the Court's summary judgment analysis, retiree benefits are "accrued" benefits and not "incident" benefits because they are designated and treated as such in the Plan language. (*See* Plan at Article VII, example 1.) Thus, the premise of this argument (that there could be a change in plan language) is simply mistaken.

Furthermore, future retirees have a clear and significant legal interest in the determination and adjudication of their rights to payment. Under the Plan language, a retiree has a right to select between the lump sum and annuity option when retiring. To intelligently understand that choice, the Retiree must ascertain the method for the calculation of his lump sum benefit. This kind of information is also helpful, if not critical, to both current workers and retirees when making decisions as to whether to continue employment or retire, and as to whether to select lump sum or annuity payment. Therefore, future retirees as well as past retirees have common legal interests and both have legal standing to prosecute requests for equitable relief.

Defendants, in their Response Brief and Sur–Reply, have also asserted a number of arguments which, according to them, undercut the commonality and typicality of class members. The first of these arguments is that although Plaintiff has administratively exhausted his claim for benefits, other class members have not, and this distinction should prevent certification of the class. This argument has already been expressly rejected by the Sixth Circuit in the context of very similar ERISA class actions. Specifically, the *Fallick* decision, noted above, rejected such an argument based on the availability of a futility exception to administrative exhaustion and the clear application of that exception to a standard method of medical benefit calculation. *See Fallick*, 162 F.3d at 419–20. In the instant case, the class representative Plaintiff has exhausted

his administrative remedies. It is noteworthy that the *Fallick* decision also cited with approval the decision in *Costantino v. TRW, Inc.,* 13 F.3d 969, 975 (6th Cir.1994), which similarly applied a futility exception to the exhaustion requirement in an ERISA class action relating to a pension benefit methodology for calculation of payment. Such case law makes clear that class membership should not be limited to persons who have administratively exhausted claims in a case like this one—wherein administrative exhaustion would be pointless because the case involves the legality of a standard calculation method.

■ Defendants have also argued that class members have dissimilar interests because of potential statute of limitations defenses which they might urge against particular class members. This argument, like Defendants' other arguments, is a thin reed to hang hope upon in the context of the ERISA legislative backdrop. ERISA adopts the pertinent state statute of limitations, which is, in this case, Michigan's six year statute for breach of contract. *See* Mich. Comp. Laws § 600.5817. Second, the ERISA limitation period does not begin to run from a date of payment or calculation of benefits. The ERISA limitation period, under the law of this Circuit and the law of several other federal circuits, does not begin to run until a participant formally presents the claim for benefits to the pension administrator and has had his claim formally denied. *Stevens v. Employer–Teamsters Joint Council,* 979 F.2d 444, 451 (6th Cir.1992).[2]

In this case, Plaintiff received his final denial letter on June 14, 2001. He filed suit on October 22, 2001. So it is clear that Plaintiff's claim is timely. Moreover, there is no evidence in this record that a single participant of the Plan, prior to Plaintiff, ever made a claim for benefits of this type (*i.e.,* that Defendants were miscalculating the lump sum in the manner described by Plaintiff) prior to Plaintiff's claim for benefits. Indeed, common sense and analysis of the authorities cited herein compel this finding. This is the type of argument familiar to some accountants and attorneys specializing in pension administration, but otherwise lost on the general public, such that there is every reason to believe that this suit is Defendants' first formal denial on this issue. Furthermore, the authorities cited by Plaintiff as to its position, both factual and legal authorities, are documents and testimony which all occurred with the six-year time frame of Michigan's statute of limitations. In fine, in the context of this kind of case, these claims, and these claimants and class members, the statute of limitations is not an applicable defense and will not prevent certification of class claims.

Defendants also argue that commonality and typicality are defeated because a class adjudication might "drain" the assets of the Plan and deprive future recipients of benefits, especially those entitled to annuity payments. Defendants' comments about annuity recipients are not apposite because this class is defined to include only those selecting lump sum benefits. The interests of annuity recipients are not common, but there is no intent to represent those interests. In terms of the suggestion that class certification might drain the Plan, presumably creating some adverse consequences for later lump sum recipients, the present record simply does not support such a result. First of all, there has been no demonstration that if lump benefits are recalculated for past and future recipients that the funds of the Plan will be inadequate to fund the recalculated payments. Second, assuming that the funds of the Plan were inadequate, ERISA, 29 U.S.C. § 1082, requires that a plan sponsor, in this case Defendant Bowater, fund unfunded promised benefits as a condition for the termination of any plan unless the sponsor is

2. As stated in Plaintiff's Sur–Sur–Reply Brief, the cases of *Union Pacific Railroad Co. v. Beckham,* 138 F.3d 325, 330 (8th Cir.1998) and *Cotter v. Eastern Conference of Teamsters Retirement Plan,* 898 F.2d 424, 428–29 (4th Cir.1990), cited by Defendants, actually support Plaintiff's position, since those cases confirm that an ERISA claim does not accrue until the claim has been formally denied. Other limitation arguments made by Defendants, such that case law from Title VII and ADEA contexts should be applied in this context and that past retirees should have exercised "due diligence" regarding the calculation of their benefits, are not persuasive, for the reasons stated by Plaintiff. (*See* Plaintiff's Sur–Sur Reply Brief at 4–6.)

insolvent. Since there is also no reason to believe that Defendant Bowater is insolvent, even if there were some shortage of funds, the law would expect these to be paid by Defendant Bowater for the benefit of all class members. Accordingly, the Court rejects Defendants' arguments.

### (3) Typicality

Rule 23 requires that the claims asserted by class representatives be typical of class members. *American Med. Systems*, 75 F.3d at 1082. As the Court of Appeals said in the *American Medical Systems* case:

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct...."

&ast; &ast; &ast; &ast;

.... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Id.* (citation omitted). The typicality requirement, so explained, tends to merge with the commonality requirement. *Falcon*, 457 U.S. at 158 n. 13, 102 S.Ct. 2364. Nevertheless, it is a separate inquiry and in particular focuses attention on differences between class representative claims and class claims which would defeat the representative nature of the class action. *Fuller*, 168 F.R.D. at 598.

In this case, the class representative's claims are typical of the claims of class members. Namely, each concern the same plan, the same plan language, the same calculation method, and the same questions of legality under ERISA and the pertinent Treasury Regulations.[3] Therefore, the Court also determines that the typicality requirement is met.

### (4) Adequate Representation

■ Rule 23(a) requires that the class members and their counsel be prepared to provide fair and adequate representation to the class. In *Senter*, the Sixth Circuit articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525; *see also American Med. Systems*, 75 F.3d at 1083; *Nat'l Ass'n of Reg. Med. Programs v. Mathews*, 551 F.2d 340, 345 (D.C.Cir.1976); *compare Oxendine v. Williams*, 509 F.2d 1405 (4th Cir.1975) (per curiam) (declining to approve prisoner class action because of *pro se* representation).

■ Plaintiff's Complaint (and the documents filed in connection with the dismissal and summary judgment motions) identify him as a plan participant who has a vested interest in retirement benefits and who has been adversely affected by the Defendants' practice for calculating a cash out of retirement benefits based in part on a mortality reduction for years prior to the participant's 65th birthday. Thus, it appears that the Plaintiff's interests are identical to those of unnamed class members. As for the class counsel, the Plaintiff law firm is a nationally recognized firm with expertise in prosecuting ERISA class actions. This is demonstrated by their history of advocacy in published opinions in this Circuit as well as other Circuits. In fact, the *Lyons* decision, which Plaintiff relies upon in his argument on the merits, was an Eleventh Circuit case in which Plaintiff's counsel was retained as class counsel and which resulted in the Eleventh Circuit's approval of relief for the class. Both Plaintiff and his counsel also appear motivated to zealously represent the class. Thus, the Court approves of Plaintiff and his counsel as adequately representing the class.

### (b)(2) Certification

■ Under Rule 23(b)(2), a class action may be certified for injunctive or declaratory relief if the party opposing the relief requested has acted or refused to act on grounds generally applicable to the class, making the

---

**3.** Defendants' other typicality arguments were    addressed above.

requests for such relief appropriate. The Sixth Circuit's language in *Fallick* implicitly endorsed Rule 23(b)(2) certification in *Forbush*-type ERISA cases. Indeed, in addition to the cases cited above, there are many other federal decisions approving certification under Rule 23(b)(2) as to such claims. *See, e.g., Caranci v. Blue Cross & Blue Shield of Rhode Island,* 194 F.R.D. 27, 39 (D.R.I.2000) (citing *Corsini v. United Healthcare Corp.,* 51 F.Supp.2d 103 (D.R.I. 1999) and *Corsini v. United Healthcare Corp.,* 965 F.Supp. 265 (D.R.I.1997)); *Groover v. Michelin North America, Inc.,* 187 F.R.D. 662, 667 (M.D.Ala.1999); *Bower v. Bunker Hill Co.,* 114 F.R.D. 587 (E.D.Wash. 1986); *Morgan v. Laborers Pension Trust Fund for Northern California,* 81 F.R.D. 669, 681 (N.D.Cal.1979).

■ In this instant cause, it is clear from the Complaint and the request for class relief as to the summary judgment motion that Plaintiff is seeking primarily equitable relief in this action—*i.e.,* an injunction requiring recalculation of benefits in accordance with ERISA and a constructive trust to secure payment of additional benefits to class members. Under pertinent case law discussed herein, such remedies are not properly regarded as "monetary relief." Therefore, and in light of the pertinent case law and facts of this case, the Court determines that the requirements of Rule 23(b)(2) are met and that certification is proper under Rule 23(b)(2).[4]

### *NOTICE AND CLASS DEFINITIONS*

Since this Court has certified under Rule 23(b)(2), but not under Rule 23(b)(3), Rule 23 does not direct that notice and opt-out procedures be used. *See* Rule 23(c)(2). Hence,

those procedures are not appropriate in this case.

As for the class definition, the Plaintiff has proposed the following class definition:

All participants or beneficiaries of participants who received a lump sum distribution from the Plan (either directly or indirectly via transfer to an individual retirement account or other eligible retirement plan), or who are entitled to receive a lump sum distribution now or in the future (either direct or indirectly via transfer to an individual retirement account or other eligible retirement plan).

(*See* Complaint at ¶ 63; Brief in Support of Class Certification, at 3.)

Upon review of the particular class definition offered here, the Court finds that it properly and specifically designates class members in an objective fashion. As such, the class definition is approved.

### *STANDARDS OF REVIEW ON THE MERITS, GENERALLY*

Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim for which relief may be granted. However, because Defendants' Motion to Dismiss raises matters outside the pleadings, the pertinent standard for review of it (as well as Plaintiff's summary judgment motion) is the summary judgment standard of Rule 56. *See* Fed. R. Civ. Proc. 12(b).

Review of a motion for summary judgment requires the Court to determine if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine

---

**4.** One thing unusual about the procedural posture of this case is that dispositive motions were filed early (before this Court could schedule any hearing or briefing on class certification) and that the request for certification was then made (in addition to the Complaint) in Plaintiff's Cross–Motion for Summary Judgment, before the filing of the certification motion. While certification in this posture is not the most desired practice under Rule 23, for the reasons explained above, the Court determines that this is the proper instance to address and decide the certification issues as well as the dispositive motions. *See, e.g., Larionoff v. United States,* 533 F.2d 1167, 1183 (D.C.Cir.1976) (approving simulta-

neous entry of judgment and class certification); *Jimenez v. Weinberger,* 523 F.2d 689, 697 (7th Cir.1975) (stating that "in some cases the final certification need not be made until the moment the merits are decided"); *see also Gurule v. Wilson,* 635 F.2d 782, 788–90 (10th Cir.1980) (allowing post-judgment class certification under Rule 23(b)(2)); *Marshall v. Kirkland,* 602 F.2d 1282, 1301 (8th Cir.1979)(same); *Johnson v. Mathews,* 539 F.2d 1111, 1125 n. 23 (8th Cir. 1976) (same); *Alexander v. Aero Lodge No. 735,* 565 F.2d 1364, 1372 (6th Cir.1977) (affirming post-judgment certification where there was a lack of prejudice).

issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## STANDARD FOR REVIEW FOR ERISA LEGAL INTERPRETATIONS

■ Although the parties do not quibble about the general standards of review under the Federal Rules, they do contest whether the Plan Administrator's legal interpretation to use the discount table is entitled to deference or whether it should be reviewed *de novo.* This dispute arises in large part because of the language employed in the famous case of *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Therein, the United States Supreme Court held that a *de novo* standard of review applies to decisions by plan administrators unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case an arbitrary and capricious standard applies. *Id.* at 115, 109 S.Ct. 948. However, the *Firestone* Court limited its holding to actions under section 502(a)(1)(B) of ERISA, *i.e.,* those "challenging denials of benefits based on plan interpretations." *Id.* at 108, 109 S.Ct. 948.

Plaintiff argues that because his cause of action was brought under section 502(a)(3), not section 502(a)(1)(B), *Firestone* does not apply and *de novo* review is appropriate. Defendants argue, to the contrary, that because this case involves a plan interpretation, regardless of the subsection label attached by Plaintiff, it falls within the deferential standard of *Firestone.*

On review of this argument, the Court believes that the Defendants have the better argument. The *Firestone* holding, while limited on its face, clearly intended itself to apply to plan interpretations. In this case, the Plan grants the Administrator deference and that deference was clearly used in reaching the benefit determination challenged here. Thus, the logic of *Firestone* favors a "clearly erroneous" standard of review. In determining this, the Court is also mindful of both published and unpublished cases of the Sixth Circuit which have applied the *Firestone* standard of review to plan interpretation questions made under sections 502(a)(2) and 502(a)(3). *See Hunter v. Caliber System, Inc.,* 220 F.3d 702, 711 (6th Cir.2000) (finding as to § 1132(a)(1)(B) claim that "this case *is* about benefits, and *Firestone* requires application of the arbitrary and capricious standard if required by the language of the plan"); *Bd. of Admin. v. Huntsman,* 187 F.3d 634, 1999 WL 591458, at *3 (6th Cir. July 27, 1999) (holding that claim brought under section 1132(a)(3) was subject to clearly erroneous review under *Firestone*); *see also Paramore v. Delta Air Lines,* 129 F.3d 1446, 1450 (11th Cir.1997).

Notwithstanding, the Court also determines that a decision on the standard of review is unnecessary to resolve the summary judgment issues because, regardless of the standard of review, clearly erroneous or *de novo,* the Court would adopt the plan interpretation stated below. This is because the legal interpretation stated below is based purely on a legal interpretation of the Plan language and the Court finds the terms used in the Plan to be unambiguous and to require the interpretation stated below. *See Williams v. Int'l Paper Co.,* 227 F.3d 706, 711 (6th Cir.2000).

## SUMMARY JUDGMENT ANALYSIS

■ To put the question succinctly, the question presented here is whether a worker who elected to receive lump sum early retirement benefits is entitled to receive the value of his retirement benefit without a mortality discount for the years until his 65th birthday. To put this question into the context of the pertinent plan language and regulations, does the above described worker have an accrued interest in the amount of the retirement benefits without reduction for a mortality discount?

Herein, it is acknowledged that section 203(a)(2)(A) of ERISA provides that "an employee [such as Plaintiff] who has completed

at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions." 29 U.S.C. § 1053(a)(2)(A). It is also not disputed that when an employee elects to take a lump sum distribution that certain deductions are proper under Internal Revenue Service regulations. The Internal Revenue Code and Regulations permit use of "the applicable mortality table" and the "applicable interest rate" in computing present value. *See* 26 U.S.C. § 417(e)(3); Treas. Reg. § 1.417(e)–1(d). Thus, another way to put the question is whether the mortality table was "applicable" when the employee elects to receive lump sum benefits before age 65 in the context of this plan language.

To understand this issue, it is important to contrast two different kinds of retirement plans. Under one kind of plan, the participant, his estate and his survivors lose any interest in the employee contributions for retirement upon the employee's death. Under this kind of plan, which is permitted under the Treasury Regulations if there is explicit plan language so providing, the plan administrator must make an assumption about mortality before retirement age in order to determine how to fund the plan. That is, one cannot determine the amount of funding without knowing the mortality risk. Under a second type of plan, a retiree has a vested interest in his retirement benefits which cannot be defeated by his death such that his estate or other beneficiary is entitled to collect accrued benefits upon his death. Under the second type of plan, a mortality discount is not proper because the assumption of the system is that the money will be made available to each participant regardless of pre-retirement death. In other words, in the later kind of system, the death of a plan participant does not affect plan funding since the money is necessarily paid to a beneficiary in the event of a participant's death.

In the instant case, the pertinent plan language says: "If a participant dies prior to his Normal Retirement Date, then no benefit of any kind shall be payable from this Plan and Trust except for the death benefit (if any) provided for in this Death Benefit Section. The amount of the Participant's death benefit shall be the then vested present value of the Participant's Accrued Benefit accrued to date of death ...." (Plan § 8.1.) This kind of system is much closer to the second kind of plan envisioned above than the first. The operation of the system does not need to discount the possibility of the participant's death because in such an event the money is paid to the participant's beneficiary. While an employer might be able to reduce or eliminate a true and separate "incidental death benefit" under the ERISA regulations, 26 C.F.R. § 1.411(a)–7, the employee's successor's right to his or her vested benefits could not be reduced in this case precisely because the plan language intended the creation of an accrued right. Another way to say this is that the plan, by giving payment to survivors in the event of death, only provided a mechanism for easy payment; it did not intend to deprive the survivors of the right to receive payment nor leave open the possibility of depriving them in the future.[5] Were the latter intended, the drafters of the Plan, who had control of the plan language, could have much more clearly and explicitly stated the result. The fact that they did not do so tends to show an intent to create an accrued benefit instead of an ancillary benefit.

Furthermore, this conclusion is buttressed by the several arguments made by Plaintiff from the case law, the Treasury Regulations and the knowledgeable authorities cited by Plaintiff. Internal Revenue Service Notice 96–8 contains a methodology for calculating the cash benefit amounts of participants under cash value plans. Under the recommended methodology, no reduction is made for mortality risks prior to retirement age. *See I.R.S. Notice 96–8* at A–18 to A–19. This case is not the unusual case which would require departure from that methodology. Indeed, leading actuarial experts who have testified before Congress have testified that when a valuation of a cash balance plan of this kind is made, no mortality adjustment

---

**5.** The end of Defendants' arguments are apparent: namely, if a plan makes its distributions and there is a resulting trust, the resulting trust is the presumptive property of the settlor. *See Borst v. Chevron Corp.*, 36 F.3d 1308, 1315 (5th Cir. 1994).

until age 65 is to be made. (Testimony of Larry D. Stahly and John F. Woyke, Plaintiff's Exhibits 11 and 12.) Furthermore, under 26 U.S.C. § 1.411(a)–7, "accrued benefits" include not only retirement benefits themselves, but also death benefits which are "directly related" to the value of the retirement benefits. In other words, those death benefits are not "incidental" to the plan's "accrued benefits." The interpretations of the Eleventh Circuit in *Lyons v. Georgia–Pacific Corp.*, 221 F.3d 1235 (11th Cir.2000) and the Second Circuit in *Esden v. Bank of Boston*, 229 F.3d 154 (2nd Cir.2000) likewise assumed the correctness of Plaintiff's position since those courts utilized Plaintiff's method of calculation and not Defendants' method. Finally, the Southern District of Illinois, *Berger v. Xerox Retirement Income Guaranty Plan*, 231 F.Supp.2d 804 (S.D.Ill. 2002), recently decided a pension benefit class action case which was prosecuted by Plaintiff's attorneys on the same grounds as this suit. The *Berger* decision upheld Plaintiff's method of calculation and required restitution to all affected class members.

For these reasons, and those other reasons argued in Plaintiff's Cross–Motion, summary judgment shall be granted in favor of Plaintiff. For the same reasons, Defendants' Motion to Dismiss shall be denied.

### REMEDIES

■ Plaintiff's proposed remedies include an injunction to forbid the future use of the offending calculation as to class members, an injunction requiring re-computation of class member benefits as to benefits already paid and payment of the difference between the amount previously paid and the recalculated amount plus pre-judgment interest, and a constructive trust over plan assets (or those of Bowater if plan assets are insufficient) sufficient to fund the restitution payments. Plaintiff argues that this relief is consistent with the Supreme Court's decision in *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) that relief under ERISA provision 502(a)(3) be for the purpose of redressing a violation or enforcing a provision of ERISA, that it is consistent with the Supreme Court's decisions in *Harris Trust & Savings Bank v. Salomon Smith*

*Barney, Inc.*, 530 U.S. 238, 250–51, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) and *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), which allowed imposition of a constructive trust over plan assets to return property belonging to plan participants. Plaintiff also requests that the restitution payments be made with interest calculated between the date the lump sum payment was initially due and the date restitution is paid at the higher of either the federal post-judgment rate for that period or the rate of return for the plan for the period. *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir.2000) (allowing such rate of interest as to a miscalculated lump sum ERISA payment to avoid unjust enrichment).

Defendants oppose this relief on several grounds. Defendants argue that under ERISA, Plaintiff may seek adequate legal relief (an award of damages under section 502(a)(1) of ERISA) and, as such, cannot obtain equitable relief pursuant to section 502(a)(3) of ERISA. *See also Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir.1998). Defendants also disagree that relief under section 502(a)(1) is inadequate because the section allows a plan participant to sue for benefits due under an ERISA plan. Defendants further argue that the requested relief is not "equitable" in the sense that Plaintiff has mis-characterized a claim for monetary relief as an equitable remedy.

Defendants' concerns, though legitimate, do not defeat the remedies sought in this case. In *Great–West*, 534 U.S. at 204, 122 S.Ct. 708, n. 2, the United States Supreme Court recognized that in the context of ERISA cases, and particularly under section 502(a), the district courts may enter appropriate equitable relief including equitable restitution and a constructive trust requiring the return of monies wrongfully retained. In *Harris Trust*, 530 U.S. at 250–53, 120 S.Ct. 2180, the Supreme Court commented on a statement in *Great–West* that orders to pay money are "almost invariable" monetary relief. The Supreme Court reviewed that "comment" in *Harris Trust* when it stated that under Section 502(a)(3) an injunction to

require return of monies wrongfully transferred is appropriate equitable relief. *Id.* Plaintiff's position is also supported by the Supreme Court's decision in *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Plaintiff's position is also strongly supported by the recent unpublished decision in *Berger*, which treated equitable restitution of monies withheld because of a mortality discount as a proper equitable remedy under ERISA.

Not only do case authorities support Plaintiff's position, but Plaintiff's position is commended by the pure dint of logic, the nature of the ERISA claim and the nature of the remedial processes. Plaintiff is not seeking here a monetary award of a sum certain. Such issues as to whether his years of service or earnings have been properly credited are not before the Court. Rather, Plaintiff is seeking the more limited, but more effective, remedy of an order requiring recalculation consistent with ERISA non-forfeiture regulations (and future correct calculation). This remedy will make Plaintiff whole, as well as other class members, without resort to time-consuming legal remedies, which would require separate and prolonged jury considerations of the amounts due each claimant— which are mostly likely not disputed anyway and which are subject to certain mathematical calculations to be performed by the Plan consistent with the Court's instructions.

■ Additionally, in cases like this, the Sixth Circuit has directed that equitable relief include an award of pre-judgment interest (*i.e.*, interest on unpaid benefits between the date of benefit payment and the date of judgment) at the greater rate of either federal post-judgment rate (under 28 U.S.C. § 1961) or the rate of return earned by the Plan on the unpaid benefits of affected workers. *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir.2000). This is done to make class members whose claims were previously paid whole and to deprive Defendants of the benefit of the wrongful conduct. *Id.* Although Defendants concur that the district court has authority to order pre-judgment interest in an ERISA benefit case in which benefits were wrongly withheld, they also imply that the Court should not use its discretion in this case. This argument is rejected because this Court, like the Sixth Circuit panel in *Rybarczyk,* believes that pre-judgment interest is necessary to fully compensate past-retirees and to avoid the Plan from taking untoward advantage of the use of those retirees' funds between the time of their retirement and the Judgment in this suit.

■ As to the calculation of pre-judgment benefits, Defendants have not commented on pre-judgment interest as to class members, but have commented that an award of pre-judgment interest to Crosby should be limited to the federal funds rate at the time of the entry of judgment because a higher rate would give him a windfall. (*See* Defendants' Sur–Reply Brief at 6–7.) Plaintiff then contends that applying the federal post-judgment rate to a pre-judgment award would be unfair to class members because the federal post-judgment/current 52–week Treasury bill rate is historically low and would under-compensate past retirees for the losses during periods of their retirement at which interest rates were much higher. Plaintiff's last argument ignores two facts. First, the pre-judgment rate utilized in *Rybarczyk* was the higher rate of either the current post-judgment rate or the Plan's rate of return for the affected period. Second, the Court will order that this calculation be done individually as to affected retirees for the time periods pertinent to their own individual retirements. In other words, a retiree who has lost the use of a portion of his or her lump retirement because of the faulty calculation is entitled to receive pre-judgment interest for the affected time period (the time between the payment of the incorrect benefit amount and the date of judgment) at the greater of the post-judgment interest rate at the time of judgment or the Plan's rate of return for the particular time period pertinent to the retired worker. Though this calculation is somewhat administratively complex, it is clearly workable given the availability of mathematical software and the ready financial data needed to make the calculations. Thus, the Court will require that these calculations be made individually as to all affected class members, including Plaintiff

**364**

Crosby. The Court will also require Defendants to share the financial data supporting its calculations with Plaintiff, so that Plaintiff can verify the accuracy of the calculations.[6]

With this said, though, Plaintiff has not made a sufficient case for the receipt of any equitable relief other than an injunction requiring recomputation and proper payment of benefits with pre-judgment interest as to benefits already paid. Such monies held by the Plan are already held in trust for Plan participants. While the monies held by Bowater, Inc. are not held in trust for plan participants, there is no sufficient basis to conclude, on the present record, that existing plan funds are inadequate to fund payments without additional contributions from the plan sponsor. Thus, while the Court accepts Plaintiff's premise that the plan sponsor is required legally to adequately fund a plan and should at times deposit additional funds in a plan to guarantee sufficient payment, there is simply an inadequate evidentiary record at this point in time to warrant the imposition of a constructive trust as to Defendant Bowater, Inc.'s assets. While so holding, Defendant Bowater, Inc. should be advised that the sword of justice is now unsheathed. If, in the future, it is apparent that the Plan is short of funds to pay the required benefits, this Court is prepared to entertain and grant a post-judgment motion requiring additional contributions by Defendant Bowater, Inc. for the purpose of adequately funding the Plan.

### CONCLUSION

For the reasons given, a Final Judgment and Injunction shall enter granting Plaintiff's Motion for Class Certification, granting Plaintiff's Cross–Motion for Summary Judgment, denying Defendants' Motion to Dismiss, and granting in part and denying in part Plaintiff's requested equitable remedies. As a result, Defendants will be enjoined to utilize the correct methodology in claim calculation in the future as well as to recalculate lump sum claims paid in the past and to

repay underpaid benefits with pre-judgment interest as individually calculated for past retirees whose lump sum benefits were incorrectly calculated.

---

**6.** Should Plaintiff have significant questions about the calculations upon review of the data, the Plaintiff would be free to request post-judgment discovery on this issue, or other appropriate remedies. Of course, post-judgment interest will also be required in accordance with 28 U.S.C. § 1961.