NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0872n.06
Filed: December 20, 2007

**No. 06-3217**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ERIC B. RESNICK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HONORABLE JOHN T. PATTON, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY and COOK, Circuit Judges; and VINSON, District Judge.[*]

**C. ROGER VINSON, District Judge.** The plaintiff, Eric B. Resnick, filed this federal declaratory relief action against retired Ohio Common Pleas and Court of Appeals Judge John T. Patton. The plaintiff alleged that Judge Patton violated his right of access to trial documents in a civil case then pending in state court. The declaratory relief action was dismissed pursuant to Rule 12(b)(1) and/or Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, we AFFIRM.

### I. BACKGROUND

The relevant facts are undisputed. The plaintiff is a freelance journalist for The Gay Peoples Chronicle, a weekly newspaper of general circulation throughout Ohio, and his reports are frequently

---

[*]The Honorable C. Roger Vinson, Senior United States District Judge for the Northern District of Florida, sitting by designation.

and regularly published. In June 2005, he was attending and reporting on a lengthy retrial of a civil rights lawsuit against McDonald's Corporation in the Court of Common Pleas of Cuyahoga County, Ohio [*Russell Rich v. McDonald's Corp.*, Case No. CV-98-368481]. The defendant, John T. Patton, was at that time a retired trial and appellate judge presiding over the case by designation. Judge Patton stated from the bench that both parties were barred from discussing the case with anyone --- including the press, but he did not seal the proceedings or otherwise prevent the press from having access to the trial itself. Indeed, members of the print media (including the plaintiff) and television cameras were present in the courtroom throughout the trial.

Beginning June 20, 2005, and every day thereafter that he attended the trial, the plaintiff approached the court bailiff and asked for permission to see the documents filed in the case. Judge Patton always responded, through the bailiff, "Not at this time." On July 1, 2005, the plaintiff learned that McDonald's had filed a number of motions in limine regarding proposed evidentiary matters. He asked Judge Patton for permission to review these filings, but his request was again denied. He then went to see Judge Richard J. McMonagle, the Administrative and Presiding Judge of the Court of Common Pleas, and he explained the situation to him. According to the plaintiff, when Judge McMonagle learned that Judge Patton had refused him access to the court file, Judge McMonagle said "[Judge Patton] can't do that." Judge McMonagle drafted a note in longhand which read: "Please allow Eric Resnick of The Gay Peoples Chronicle to review all pleadings in the case --- CV368481 Rich v. McDonald's Corp. during the lunch hour --- Mr. Resnick may not remove the pleadings from the court." The plaintiff personally delivered the note to Judge Patton, but he again refused to allow the plaintiff to view the documents. The plaintiff says that Judge Patton told

him "I can't do that. Those are just for the jury." After refusing to put his decision in writing, Judge Patton handed Judge McMonagle's note back to the plaintiff.

On July 5, 2005, the plaintiff filed an action against Judge Patton in the United States District Court for the Northern District of Ohio pursuant to Title 42, United States Code, Section 1983, seeking (i) declaratory relief and (ii) a preliminary and permanent injunction. Also on July 5, 2005, the plaintiff filed a separate motion for injunctive relief. At the time the complaint and request for injunctive relief were filed in federal court, the underlying state case was still ongoing. The next day, however, the case was submitted to the jury and a verdict was reached on July 7, 2005. Judgement was entered on July 12, 2005. At some point during this period the entire case file was made available for public inspection. The defendant asserts that immediately after the case was submitted to the jury, Judge Patton invited the plaintiff into his chambers and gave him photocopies of the motions in limine, complete with the Judge's handwritten notation as to his ruling on each motion. The plaintiff states in response that this is "not entirely accurate." Regardless of precisely when and how the filings were made available, it appears to be undisputed that the plaintiff was granted access to the case file at some point during this period, either immediately after the jury began its deliberations or around the time that the verdict was returned. Consequently, the plaintiff voluntarily dismissed the motion for injunctive relief, along with count (ii) of the complaint, because that requested injunctive relief was now moot. His claim for declaratory relief remained pending.

On August 16, 2005, Judge Patton moved to dismiss the remaining count pursuant to Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff did not oppose or otherwise respond to the motion to dismiss. The district court granted the motion and dismissed the

case on the grounds that, *inter alia*, there was no longer an Article III case or controversy because the state case was concluded and the case filings were now a matter of public record. The plaintiff filed this appeal, arguing that Judge Patton's refusal to allow contemporaneous access to the court filings was a prior restraint in violation of his First Amendment right of access. Judge Patton passed away during the pendency of this appeal.

## II. DISCUSSION

Preliminarily, we note that this appeal does not involve prior restraint. *See Application of NBC, Inc.*, 828 F.2d 340, 343 (6th Cir. 1987) (stating on similar facts: "This is not a prior restraint case. NBC is not restrained by the district court's order from publishing or broadcasting documents or information in its possession. Rather, the case concerns the right of the public and representatives of 'the media' to have access to documents filed in a district court. . . ."). Nor does this case involve the plaintiff's First Amendment right of access to court proceedings, since television cameras and print reporters (including the plaintiff) were allowed in the courtroom throughout the trial itself. Instead, this case only involves the denial of access to court documents. *See United States v. Beckham*, 789 F.2d 401, 406-11 (6th Cir. 1986) (noting the difference between the press being "denied its constitutionally guaranteed right to be present at trial," and it being denied access to trial documents and exhibits). While it is true that the public and the press have a presumptive common law right of access to court documents, *see generally Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978), this right of access is not absolute:

> Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. *** [T]he decision as to access is one best left

> to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.

*Id.* at 598-99.

We are not convinced that Judge Patton erred in denying the plaintiff access to the motions in limine and related exhibits. As the district court noted, the plaintiff was only *temporarily* prohibited from viewing the documents while Judge Patton exercised his discretion in ruling on the admissibility of the challenged evidence. Judge Patton replied "Not at this time" when the court file was requested, suggesting that he intended to make it available to the media at a later time, which he did, once the motions were resolved. It is important to note in this context that to the extent the motions in limine sought to exclude evidence that was ultimately ruled inadmissible (a circumstance that is not clear on this record), it is likely that the plaintiff did not have any right to such evidence in the first place. *Cf. Beckham*, *supra*, 789 F.2d at 411 ("[T]he common-law right is stated as a right to inspect and copy public records, and the transcripts here were not public records. They were not admitted into evidence, as were the tapes."). However, we need not (and do not) decide whether Judge Patton erred in denying the plaintiff immediate access to the filings in question. Assuming that he did, this appeal must still be dismissed.

Article III, Section 2, of the United States Constitution limits our jurisdiction to actual cases and controversies. As we stated in *United States v. City of Detroit*, 401 F.3d 448 (6th Cir. 2005):

> "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) (citing *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992)). "A case becomes moot 'when the issues presented are no longer live or

> parties lack a legally cognizable interest in the outcome.'" *Id.*
> (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct.
> 1379, 59 L. Ed. 2d 642 (1979)). Mootness generally depends on
> "whether the relief sought would, if granted, make a difference to the
> legal interests of the parties . . . ." *McPherson v. Michigan High
> School Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en
> banc) (internal quotation marks and citation omitted). "The mootness
> inquiry must be made at every stage of a case; thus, if a case becomes
> moot during an appeal, the judgment below must be vacated and the
> case remanded with instructions to dismiss." *Id.*

*Id.* at 450-51.

It is plain that the controversy at issue here is moot. At the time the plaintiff filed this action,

he was being denied access to the motions in limine and related exhibits filed in the state case. Even

if this denial of access was improper (a matter which, as previously noted, we do not reach), the state

case has now been concluded and the documents in question are a matter of public record.

Consequently, the issues presented are no longer alive and the parties no longer have a legally

cognizable interest in the outcome of the case. The granting of a declaratory judgment in favor of

the plaintiff would have no impact upon the legal interests of the parties. In short, there is no viable

case or controversy.

We recognize that there is an exception for moot issues "capable of repetition yet evading

review." *See Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S. Ct. 279, 55 L. Ed. 310

(1911). We recognize, too, that this exception has been applied in the right of access context. *See*

*Beckham, supra*, 789 F.2d at 405-06. However, this exception is quite narrow and available only

in "exceptional cases." *See Thomas Sysco Food Services v. Martin*, 983 F.2d 60, 62 (6th Cir. 1993).

The "capable of repetition yet evading review" exception applies where (1) the action was too short

in duration to be fully litigated prior to its expiration, and (2) there is a "reasonable expectation" that the same complaining party will be subjected to the same challenged action in the future. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975). Notably, the Supreme Court of the United States "has never held that a mere physical or theoretical possibility was sufficient to satisfy the test stated in *Weinstein*. If this were true, virtually any matter of short duration would be reviewable." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982). Rather, the Supreme Court has stated "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.*[1]

On the facts here, there is simply no reasonable expectation or demonstrated probability that the plaintiff will again be subjected to the same access restrictions. While the plaintiff is a freelance journalist whose reports are frequently and regularly published, there is no claim in the complaint that he anticipates attending another similar trial and seeking access to another court file.[2] Even if it is assumed that he will attend future trials and seek to review court filings, it is at most "a mere

---

[1] The plaintiff argues that the district court "overlooked" and did not "address directly" the "capable of repetition yet evading review" exception. However, the party asserting the exception bears the burden of establishing both *Weinstein* prongs. *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (citing multiple cases). While in the district court, the plaintiff did not argue that this exception applied --- let alone establish both prongs --- as he did not oppose the motion to dismiss. The argument, therefore, has been waived. *Hood v. Tenn. Student Assistance Corp. (In re Hood)*, 319 F.3d 755, 760 (6th Cir. 2003) (arguments not raised below are waived on appeal); *see also Brown v. Warden, Warden, USP-Florence*, 224 Fed. Appx. 732, 733-34 (10th Cir. Feb. 6, 2007) (unpublished) (argument in support of capable of repetition yet evading review exception waived when not previously raised by party). Even if the exception has not been waived, for the reasons discussed immediately above, the argument must fail on the merits.

[2] The plaintiff contends in his brief on appeal that he attends court proceedings as part of his job because his reports frequently cover "legal" issues, but there is no such claim in his complaint.

physical or theoretical possibility" that he will again be denied access. There is, for example, no suggestion that the Court of Common Pleas of Cuyahoga County, Ohio, has a policy or practice of denying media access to court records. *Compare Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983) (capable of repetition yet evading review exception applied because, *inter alia*, "there is every indication that the district court plans to maintain *its policy* of excluding from time to time the public and press from court proceedings") (emphasis supplied). Notably, the plaintiff did not file this case against the court or the county, but rather only against Judge Patton personally. He does not claim that his right of access has ever been restricted by another judge in a previous case, nor is there any indication that he will again be subjected to access restrictions by another judge in a future case. Quite to the contrary, when the plaintiff reported the situation to the Presiding Judge of the Court of Common Pleas, Judge McMonagle apparently had no reluctance to provide the plaintiff the requested access. Judge McMonagle went so far as to write a note specifically advising that the plaintiff should be allowed to see the court file. Judge McMonagle seemingly believed that the plaintiff was entitled to see the filings. Judge Patton obviously felt that the circumstances and timing warranted some delay in granting access, but we do not know his rationale. Of course, he is now deceased and the trial long concluded. This case appears, therefore, to arise out of a situation involving one specific (and now-deceased) jurist during one particular trial. There is no reasonable expectation or demonstrated probability that the plaintiff will have this same controversy recur.[3]

---

[3] Relying on *Lawrence v. Blackwell*, 430 F.3d 368 (6th Cir. 2005), the plaintiff argues that the threshold necessary to establish a likelihood that the same injury will be repeated is "low" and "quite minimal." The plaintiff in *Blackwell* was a candidate running for Congress. He challenged the constitutionality of an Ohio state statute that required him to file a statement of candidacy and

## III. CONCLUSION

For the reasons discussed above, we AFFIRM the judgment by the district court.

---

nominating petition one day before the primary election. By the time we decided the case on appeal, the election had passed. In holding that the case was capable of repetition, yet evading review, we held that under the particular facts and circumstances of that case, it was "reasonable to expect" that the plaintiff will again run for Congress in a future election. *Id.* at 371. Furthermore, even if it was not reasonable to expect that the plaintiff would run for political office in the future, "the fact that the controversy almost invariably will recur with respect to some future potential candidate or voter in Ohio is sufficient to meet the second prong [under *Weinstein*] because it is somewhat relaxed in election cases." *Id.* at 372. The case *sub judice* does not involve regularly recurring Congressional election procedures and, for the reasons already discussed, it is not reasonable to expect on the facts here that the plaintiff will encounter the same action in the future. *Lawrence* is thus inapplicable.