NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0103n.06

No. 14-3301

FILED
Feb 03, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

WILLIAM EVANS,                                     )
                                                   )
    Plaintiff-Appellee,                       )
                                                   )
                                                   )    ON APPEAL FROM THE
v.                                                 )    UNITED STATES DISTRICT
                                                   )    COURT FOR THE
LABORERS' DISTRICT COUNCIL                         )    NORTHERN DISTRICT OF
AND CONTRACTORS' PENSION                           )    OHIO
FUND OF OHIO,                                      )
                                                   )
    Defendant-Appellant.                      )

Before: MCKEAGUE and KETHLEDGE, Circuit Judges; BERTELSMAN, District Judge.[*]

PER CURIAM. This is a case in which the plaintiff seeks pension benefits. It is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. The defendant, Laborers' District Council and Contractors' Pension Fund of Ohio ("the Pension Fund" or "the Fund"), appeals from several orders and a judgment in which the district court declined to dismiss plaintiff's claim and found that he was entitled to both pension benefits and attorney's fees. We reverse.

_____

[*]The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

**A.**     <u>**The Pension Fund, 1976 Pension Plan, and Evans's Employment**</u>

William Evans worked as a union laborer in Ohio during the 1960s and 1970s. From 1968 to 1977, Evans worked for Ruhlin Construction Company ("Ruhlin"), a contributing employer to the multi-employer Pension Fund.

The Pension Fund is one of three employee-benefit-trust funds and one labor-management-cooperative trust that comprise the Ohio Laborers' Fringe Benefit Programs ("OLFBP"), an entity which serves as the administrative office for the funds.[1]

Under the applicable 1976 Pension Plan, an employee earned "PENSION CREDIT" for work performed after December 31, 1967, where "EMPLOYER CONTRIBUTIONS at the STANDARD RATE OF CONTRIBUTION were credited to his account" for certain hours worked during a calendar year. Where the employer made such contributions, pension credits were calculated as follows: 1 year credit for contributions for hours in excess of 1000; ¾ year credit for 750-999 hours; ½ year credit for 500-749 hours; ¼ year credit for 250-499 hours; and no credit for fewer than 250 hours.

For each year of pension credit earned by the employee, he was also credited with one year of vesting credit, which determined whether the employee had a non-forfeitable interest in pension benefits under the Plan. In order to be eligible to receive pension benefits at age sixty-five, the employee was required to have accumulated at least ten years of vesting credits.

---

[1] The logistics of the Pension Fund are described in the record: "Contractors enter into collectively bargained agreements with Local Labor Unions. Based on the terms of the agreements, the contractors are obligated to pay contributions to the Funds based on the number of hours worked within the Union's jurisdiction. The contributions are remitted monthly to the OLFBP Fund Office and invested until needed to pay benefits to the members."

Evans apparently inquired of OLFBP regarding his pension status in 1977, because a letter to Evans dated December 19, 1977, from the Administrator of OLFBP states:

> In response to our phone conversation of today, I have enclosed your Pension History records of hours contributed in [sic] your behalf in accordance with the Pension Plan Provisions **you have 9 ½ future service credits from 1968 through to date.** If you have at least one year of union membership prior to January 1, 1968, you would be fully vested for an early retirement at age 55 or older or normal retirement at age 65.

(emphasis added).

Further, a letter to Evans dated July 10, 2001, states that the first employer contribution to his account for work performed as a laborer was in 1968. The letter then explains how past service credits prior to 1968 were calculated, noting that Evans should supply the Fund with any documentation of such prior service by him in the Pension Fund's jurisdiction.

**B.      Evans Applies for Pension Benefits in 2006**

Evans completed a "Pension Application" dated August 26, 2006, on which he indicated that he had first been employed within the Pension Fund's jurisdiction on October 18, 1967, and that his last date worked was January 17, 1978.

A computer printout titled "P - LDC&C Pension Fund of Ohio" with an "as of" date of "09/12/06" shows that Evans's account was credited with one pension credit and one vesting credit for each of the years 1968 and 1970 through 1977. For 1969, his account was credited with one-half of a credit, based on employer contributions for 505 work hours. The statement also shows that Evans's 9.5 credits remained in his account through 1986, but that his balance reverted to zero in 1987.

By letter dated February 28, 2007, the Pension Manager of OLFBP wrote to Evans, denying his application for pension benefits:

We regret to inform you that your application for a Regular Retirement benefit from the Laborers' District Council and Contractors' Pension Fund has been rejected because the eligibility rules of the benefit for which you applied have not been met.

. . .

According to our records, pension contributions were made on your behalf in 1968 through 1977.  However, you suffered a permanent break in service in 1987 because you left the Plan's coverage for a period of consecutive years longer than your vesting credit (9.50), which resulted in a forfeiture of the prior years credit.  Therefore, you are not entitled to any benefit from this Fund.  **We have enclosed a breakdown of your hours and credits for your review.**

Additionally, we received your Itemized Statement of Earnings Data from the Social Security Administration.  After a complete review of this document, it has been determined that you are not entitled to any past service pension/vesting credits.

In order to receive past service credit, a participant must have worked in the construction industry as a laborer in this Fund's jurisdiction at least 1,000 hours in each consecutive year prior to 1967.  Based on your Social Security Itemized Statement of Earnings Record, this requirement was not met in 1967; therefore you do not qualify for past service credit.

**If you are in disagreement with this decision, in whole or in part, you may file an appeal in accordance with the enclosed Appellate Procedures.** . . .

(emphasis added).

The enclosed "Summary of Pension Appeal Procedures" states:

Within sixty (60) days after an adverse benefit determination, the Claimant (*Participant, Beneficiary, or other person claiming benefits through or on behalf of such Participant*) must submit a written letter of appeal to the following address . . .

The letter of appeal should include the reason(s) for making the claim, any facts or documentation or records supporting the claim, the name and address of the claimant, and any written comments or other information relating to such claim.

> Upon receipt of the letter of appeal, the Board will review the claim at their next meeting, make a decision regarding the claim, and notify the claimant within five (5) days after the benefit determination. **All adverse determinations on review shall be final and binding on all parties and not subject to further review or appeal unless new and compelling evidence is received with a new letter of appeal within sixty (60) days after the initial denial.**

(emphasis added).

In an undated letter to the Pension Fund titled "Notice of Appeal," stamped "received" by OLFBP on August 22, 2007, Evans wrote, in relevant part: "I am stating that during the period of 1967 to 1970 [] I was employed working as a Laborer for the attached companies and the dates. Therefore I believe I am entitled to receiv[e] the credit to my pension on the attached work times I contributed to my pension."

> On October 1, 2007, the OLFBP Pension Manager wrote to Evans:

> The Laborers' District Council & Contractors' Pension Fund of Ohio Appeals and Review Committee has reviewed your appeal requesting the Fund grant you Regular Retirement benefits. **After a review of the facts, the Committee denied your appeal.**

> Since you do not have the required ten pension credits (Article VI, Section I) you are not eligible for Regular Retirement. In 1967, the contractor you worked for was not a laboring contractor in the industry.

> If you have new and compelling information that you believe entitles you to appeal this matter further, **a letter of appeal must be filed within 60 days after you receive this notice** and should be sent to the Pension Fund Board of Trustees, attention Denise Sikes.

(second emphasis added).

On June 3, 2008—six months after this letter—an attorney named Alfred E. Schrader wrote to the Pension Fund Manager stating that he had been retained by Evans to "look into his pension benefit request." Schrader stated that he was enclosing four documents, including "[y]our pension credit printout," which showed that Evans had a one-half year credit for 1969.

Following this letter in the Administrative Record is another pension credit printout like the one discussed above, but bearing an "as of" date of "02/28/07," the same date as the OLFBP's first denial letter which stated that it was accompanied by "a breakdown of your hours and credits."

In his letter of June 3, 2008, attorney Schrader inquired as to the time period for which Evans lacked the necessary ten vesting credits. With respect to 1969, Schrader noted that he was preparing an affidavit from a Ruhlin supervisor who would state that Evans worked for that company for the entire year.

On June 27, 2008, the OLBFP Pension Manager wrote to Evans, acknowledging receipt of Schrader's letter but stating the Fund did not have a release from Evans allowing the Fund to discuss the matter with someone other than Evans. The letter then stated:

> You should not construe the Fund's response to your request for information as a waiver of its rights. Any appeal would be considered untimely under the rules of Laborers' District Council and Contractors' Pension Fund of Ohio Pension Plan (the Plan). Please see item #5 regarding your timeline to file an appeal.

The referenced fifth item states: "Letter dated October 1, 2007 denying your appeal for pension benefits."

On July 11, 2008, attorney Schrader again wrote to OLFPB. Schrader attached a release signed by Evans and an affidavit by a person named Calvin C. Jett, in which Jett averred that he had been employed as a supervisor with Ruhlin; that he had worked with Evans; that Evans had been employed by Ruhlin as a full-time employee for all of 1969; and that Evans had worked more than 1000 hours in 1969.

> OLFBP responded to this letter on September 5, 2008:

> This shall serve as a response to your letter dated July 11, 2008. **Your request for appeal is denied as untimely.** The letter sent to your client on October 1, 2007, which notified him that his original appeal had been denied, unambiguously states that a second appeal "must be filed within 60 days after you receive this

notice."  In addition, Mr. Evans was notified in a letter dated June 27, 2008 that "Any appeal would be considered untimely under the rules of the Laborers' District Council and Contractor's Pension Fund of Ohio Pension Plan. . .".

(emphasis added).  This letter also explained why, even had Evans's appeal been timely, Evans was not eligible for pension benefits due to insufficient credit prior to November 1, 1967, as well as for the year 1969.

## C.    Evans Files Two Lawsuits Challenging the Denial of Pension Benefits

On September 30, 2010, Evans filed a lawsuit ("*Evans I*") in the Court of Common Pleas for Summit County, Ohio against OLFBP and the Laborers' District Council of Ohio ("the Union").  Evans alleged that he had been a union laborer participating in OLFBP; that defendants had "contended" that he only received credit for "one-half of a year of service in 1969;" that he had exhausted his administrative remedies by seeking relief from OLFBP; and that he was entitled to pension benefits from OLFBP.  On October 12, 2010, Evans filed a Notice of Dismissal under Ohio Rule of Civil Procedure 41(a)(1)(a) voluntarily dismissing the case.

On April 26, 2011, Evans filed another lawsuit ("*Evans II*"), this time in the United States District Court for the Northern District of Ohio, naming as defendants OLFBP, the Union, and the Pension Fund.  Evans again alleged that he had been a union laborer; that defendants had "contended" that he only received credit for "one-half of a year of service in 1969;" that he had exhausted his administrative remedies by seeking relief from OLFBP; and that he was entitled to pension benefits from OLFBP.  Evans alleged a violation of ERISA, 29 U.S.C. § 1132(a)(1)(B). *Evans v. Ohio Laborers' Fringe Benefit Programs*, N.D. Ohio Case No. 5:11-cv-00815-BYP.

On July 25, 2011, Evans filed a Notice of Voluntary Dismissal of Certain Parties under Federal Rule of Civil Procedure 41(a)(1)(A)(i), dismissing OLFBP and the Union and leaving the Pension Fund as the only defendant.

Shortly thereafter, on August 8, 2011, Evans filed a Notice of Dismissal, voluntarily dismissing the action in its entirety. At that time, the Pension Fund had neither answered nor filed a motion for summary judgment. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). The assigned judge entered an order "approving" the dismissal the same day.

**D.**     **Evans Files a Third Lawsuit: The Proceedings Below**

Evans, with new counsel, filed the action underlying this appeal on June 8, 2012, again challenging the denial of his pension benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Evans named as defendants the Union, OLFBP, and the Pension Fund.

Evans attached to his Complaint as "Exhibit A" a copy of the pension credit printout dated "as of 02/28/07," averring that it was a "record[] supplied to Plaintiff by Defendant Laborers District Council and Contractors Pension Fund of Ohio" which showed the Fund's record of the hours worked by Evans.

On July 25, 2012, Evans filed a motion to dismiss the Union and OLFBP, which the district court granted two days later, leaving the Pension Fund as the only defendant.

On September 10, 2012, the Pension Fund filed a motion to dismiss Evans's complaint, arguing that Evans's voluntary dismissal of *Evans II* operated as "an adjudication on the merits" under Federal Rule of Civil Procedure 41(a)(1)(B) and that, although the Fund had not been sued in *Evans I*, the Fund was in privity with OLFBP.

The district court converted the motion to dismiss to a motion for summary judgment and ordered additional briefing on the issue of whether the Pension Fund and OLFBP were in privity. The Pension Fund then filed an expanded motion for summary judgment, which the parties fully briefed. On February 11, 2013, the district court denied the Fund's motion for summary judgment on the basis that the Fund had not shown that it and OLFBP were in privity.

The Pension Fund then filed the Administrative Record. On March 31, 2013, Evans moved to supplement the Administrative Record with an additional page from his Social Security Administration records showing his earnings at Ruhlin for 1968 to 1970. The Pension Fund stated that it did not object to the motion to supplement. The parties then briefed the merits of Evans's claim for benefits.

On March 25, 2014, the district court issued an opinion finding that the Pension Fund's denial of benefits to Evans was arbitrary and capricious; ordering that Evans be awarded pension benefits; and ordering the Fund to pay Evans's reasonable attorney's fees in bringing the action. The district court concurrently entered judgment in Evans's favor. The Pension Fund filed its Notice of Appeal the same day.

## II.

### A.    Rule 41(a)(1)(B): The "Two Dismissal Rule"

This Court reviews de novo a district court decision based on claim or issue preclusion. *United States v. Dominguez*, 359 F.3d 839, 841 (6th Cir. 2004) (citing *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 851 (6th Cir. 1997)).

Federal Rule of Civil Procedure 41(a)(1)(B) provides:

*Effect*. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

A voluntary dismissal under Fed. R. Civ. P. 41(a) has the effect of a judgment with prejudice when it is the second suit based on the same transaction. *Demsey*, 488 F. App'x 1, 3 (6th Cir. 2012). "Because of the ease with which a voluntary dismissal may be secured, courts have held

that the two-dismissal rule was 'practically necessary to prevent an unreasonable use of dismissals.'" *Id.* (quoting *Loubier v. Modern Acoustics*, 178 F.R.D. 17, 20 (D. Conn. 1998)).

"Rule 41(a)(1)(B) 'was intended to eliminate the annoying of a defendant by being summoned into court in successive actions and then, if no settlement is arrived at, requiring him to permit the action to be dismissed and another one commenced at leisure.'" *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990)).

Here, it is undisputed that at the time Evans voluntarily dismissed *Evans II* he had previously voluntarily dismissed his state-court action. Nor can it reasonably be disputed that the actions involved the same claim: Evans's alleged entitlement to pension benefits. Under the plain language of Federal Rule of Civil Procedure 41(a)(1)(B), therefore, the dismissal of *Evans II* operated as an "adjudication on the merits."

Evans argues on appeal that his dismissal of *Evans II* was not a voluntary, unilateral dismissal under Rule 41 because it was "disposed of by way of Order of the Trial Court." We reject this contention. The record is clear that the dismissal of *Evans II* was achieved by Evans filing a Notice of Dismissal at a time when the Pension Fund had neither answered nor filed a motion for summary judgment. Evans was thus entitled to dismiss his complaint voluntarily, without a court order. Fed. R. Civ. P. 41(a)(1)(A)(i). The district court's notation of "Approved" on the top of the notice does not alter this conclusion. *See Gioia v. Blue Cross Hosp. Serv., Inc. of Mo.*, 641 F.2d 540, 544 (8th Cir. 1981) (holding that "Memorandum for Clerk" filed by plaintiffs in which they stated that they were dismissing action without prejudice operated as voluntary dismissal and not a dismissal by court order, even though judge signed his name and wrote "So ordered" on side of document, where defendants had not filed answer or

moved for summary judgment and were not given an opportunity to oppose the dismissal);

*Crowe v. Blue Cross Hosp. Serv., Inc. of Mo.*, 84 F.R.D. 623, 626 (E.D. Mo. 1979) (similar).

The district court nonetheless concluded that Evans's complaint was not barred because the Fund was not sued in *Evans I*, and the Fund and OLFBP (who was sued) were not in privity.

> The learned authors of *Moore's Federal Practice* observe:
>
> A defendant who was not actually named as a party in prior actions against [an]other unrelated defendant may generally not invoke the two dismissal rule to bar the third action, even if the third action is based on the same claim.
>
> However, the rule may be applied to bar suit against a defendant who is substantially the same, or in privity, with a defendant named in the prior suits, or whose interests were implicated by the subject matter of the litigation.
>
> A motion to dismiss invoking the two dismissal rule should be denied if a factual question exists regarding the existence of privity between the defendants. The mere identity of interest between the plaintiffs in the first two suits is not sufficient to trigger the two dismissal rule, if the defendants are not in privity.

8 James Wm. Moore, *Moore's Federal Practice* § 41.33[7][k] (3d ed. 2014).

Here, the evidence demonstrates privity between the Pension Fund and OLBPF for purposes of Evans's benefits claim. The Fund attached to its motion for summary judgment an affidavit from OLFBP's Administrative Manager who testified that OLFBP is the administrative office for the Pension Fund; OLFBP holds itself out to the public as an agent of the Pension Fund; OLFBP has the capacity to sue on behalf of the Pension Fund, which it does in numerous delinquent contribution cases in Ohio; the Fund is bound by the judgments obtained in those cases; and the Fund and OLFBP share the same interests and desired results in benefits litigation and, specifically, in Evans's lawsuits.

Second, Evans's own correspondence—including that of his attorneys—illustrates this relationship between the Fund and OLFBP and demonstrates that Evans perceived the two to be essentially a single authority as it pertained to his application for benefits. For example, the 1977

letter responding to Evans's query about his pension credits is written on "Ohio Laborers' Fringe

Benefits Programs" letterhead; the February 28, 2007 letter denying his application for benefits

is on "OLFBP" letterhead and is authored by Denise S. Sikes, "Pension Manager"; Evans's

August 22, 2007, "appeal" is directed to Sikes and her response thereto is also on "OLFBP"

letterhead; attorney Schrader's letter of June 3, 2008, is directed to Sikes as "Pension Manager,

OLFBP" and her letter to Evans of June 27, 2008, is on "OLFBP" letterhead; and Schrader's

"appeal" letter of July 11, 2008, is directed to Sikes as "Pension Manager, OLFBP" and her

response thereto is on "OLFBP" letterhead.

In short, the evidence overwhelmingly shows that the Pension Fund and OLFBP are

essentially the same entity with respect to pension-benefit applications and their interests were

co-extensive in such matters.[2] We thus conclude that the Pension Fund and OLFBP were in

privity, and the Fund was entitled to summary judgment.

## B.     Administrative Exhaustion

The Fund also appeals the district court's holding that Evans's failure to exhaust his

administrative remedies by timely appealing the denial of his pension benefits application was

excused on the ground of futility. This Court "reviews a district court's decision to apply the

administrative exhaustion requirement in an ERISA action for abuse of discretion." *Smith v.*

*Local No. 25 Iron Workers' Pension Plan*, 99 F. App'x 695, 697 (6th Cir. 2004) (citing *Fallick v.*

*Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998)).

"While ERISA itself does not contain an administrative exhaustion requirement, this

court has explained that '[t]he administrative scheme of ERISA requires a participant to exhaust

---

[2] The district court stated that privity could not exist because OLFBP was only an "office" and thus not a legal entity capable of suing or being sued. The court cited no authority for this proposition, but, given the evidence of the relationship between the Fund and OLFBP, the nature of OLFBP's legal status is irrelevant.

his or her administrative remedies prior to commencing suit in federal court.'" *Id.* (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 90 (6th Cir. 1997)). And futility operates as an exception to ERISA's administrative exhaustion requirement. *Id.* at 698 (citing *Fallick*, 162 F.3d at 419). "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* (quoting *Fallick*, 162 F.3d at 419) (internal quotation marks omitted). "Accordingly, futility means that it is certain that the plaintiff's claim, after proceeding through the provided administrative remedies, would be denied." *Id.* "Generally speaking, we have applied the administrative-futility doctrine in two scenarios: (1) when the 'Plaintiffs' suit [is] directed to the legality of [the plan], not to a mere interpretation of it,' and (2) when the defendant 'lacks the authority to institute the [decision] sought by Plaintiffs.'" *Dozier v. Sun Life Ass. Co. of Canada*, 466 F.3d 532, 535 (6th Cir. 2006) (alterations in original) (citations omitted).

The district court acknowledged that Evans's two appeals of the Pension Plan's eligibility determination were untimely. It nonetheless excused his failure to exhaust, citing "the disparity in terms of the quality and quantity of the evidence on both sides of the dispute" and the fact that the Reviewing Committee ultimately rejected Evans's application. The court also stated that the Plan "obstinately" relied on its own records of Evans's pension account in so ruling, criticizing the reliability of those records.

However, this Court has cited with approval case law holding that the mere denial of initial claims is not enough to establish the futility of internal plan remedies. *Smith*, 99 F. App'x at 698 (citing *Commc'ns Workers of Am. v. AT&T*, 40 F.3d 426, 433 (D.C. Cir. 1994). Obviously, all plaintiffs coming to federal court with such ERISA claims will have had their

benefits claims denied. If that were sufficient to demonstrate futility, the exhaustion requirement would be meaningless.

The district court also stated that "a more significant indication" of futility was defendant's "behavior in the lawsuit," referring to the omission from the Administrative Record of a Social Security Administration document showing Evans's earnings in 1969. The court cited no authority for the proposition that a benefit plan's counsel's litigation conduct has any bearing on the futility of a claimant's timely pursuit of administrative remedies, and this Court is aware of none. Further, there is no evidence in the record that this omission was deliberate or the result of any improper motive. As noted, the Plan did not oppose Evans's motion to add the document to the Administrative Record.

In sum, Evans sought neither to challenge the legality of Plan terms nor a remedy that the Plan was without authority to bestow; rather he challenged only the Plan's interpretation of its terms. *Dozier*, 466 F.3d at 535. Further, he never stated a factual basis for his failure to file timely appeals of the Plan's determinations. *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 505 (6th Cir. 2004) (requiring a "clear and positive" indication of futility).

For these reasons, we conclude that the district court abused its discretion in excusing Evans's failure to timely exhaust his administrative remedies on the grounds of futility. *See Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006) ("An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, . . . improperly applies the law, . . . or . . . employs an erroneous legal standard." (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 748 (6th Cir. 2005))).[3]

---

[3] The Pension Fund also challenges the district court's order allowing Evans to supplement the Administrative Record. However, the Plan waived this issue because it did not oppose Evans's motion to supplement in the district court. *See Humphrey v. U.S. Attorney General's Office*, 279

Given these conclusions, the Court need not address the other issues raised by the Fund on appeal.

### III. CONCLUSION

For the above reasons, the judgment and award of attorney's fees in Evans's favor is reversed and this matter is remanded for entry of judgment in favor of the Pension Fund.

---

F. App'x 328, 331 (6th Cir. 2008) (citing *Resnick v. Patton*, 258 F. App'x 789, 790-91 n.1 (6th Cir. 2007)).